STATE ex rel. JOHN G. ROCHE v. EDWARD G. ROGERS.[1]

February 16, 1906.

Nos. 14,688—(236).

**Clerk of District Court.**

Chapter 333, p. 577, Laws 1903, fixing and regulating the collection and disposition of the fees of clerks of district courts in counties having, or which hereafter may have, a population of two hundred thousand inhabitants or over, as amended by chapter 171, p. 221, Laws 1905, is constitutional.

**Population of County.**

The legislature has the power to prescribe any reasonable method for determining whether or not a county has the requisite population.

**Same—Reference to Census.**

A provision that, in determining at any time to which counties the act shall apply, reference shall only be had to the United States census last taken, is reasonable and valid.

[1] Reported in 106 N. W. 345.

Alternative writ of mandamus issued from the district court for Ramsey county, upon relation of John G. Roche, a judgment creditor in a judgment therein docketed, requiring defendant as clerk of that court to issue an execution upon the judgment upon being tendered the fee provided by chapter 333, Laws 1903, or show cause to the contrary. The point in issue was the constitutionality of chapter 171, Laws 1905, which amended the former act and postponed its operation in Ramsey county. The case was tried before Brill, Kelly, Bunn, Lewis, Orr and Hallam, JJ., who made an order, (Kelly, J., dissenting,) discharging the alternative writ and refusing a peremptory writ. From a judgment entered pursuant to the order, plaintiff appealed. Affirmed.

*Thos. R. Kane* and *O. H. O'Neill,* for appellant.

*Horton & Denegre,* for respondent.

ELLIOTT, J.

This is an appeal from a judgment entered pursuant to an order refusing to direct the issuance of a peremptory writ of mandamus requiring the clerk of the district court of Ramsey county to issue an execution upon the payment of the fee fixed by section 5553, G. S. 1894. The effect of the order was to hold that chapter 171, p. 221, Laws 1905, is constitutional, and that Ramsey county is not within the class of counties governed by chapter 333, p. 577, of the Laws of 1903.

The act of 1903 fixes and regulates the collection and the disposition of the fees of clerks of the district court in counties having or which hereafter may have a population of two hundred thousand inhabitants or over. Section 16 of this statute provides that,

> In determining at any time to what counties this act shall apply, reference shall be had to the United States or state census last taken.

This section is amended by chapter 171, p. 221, Laws 1905, so as to read as follows:

> In determining at any time to what counties this act shall apply, reference shall only be had to the United States census last taken.

The effect of this amendment is to postpone the time when Ramsey county can come within the act of 1903 until the federal census of 1910

is taken and declared. The federal census of 1900 shows that Ramsey county then had a population of less than two hundred thousand, while it appears from the state census, taken in 1905, that at that time it had in excess of that number. But for the amendment of 1905, it is apparent that Ramsey county would have been brought within the 1903 statute upon the publication of the state census of 1905. The question is as to the power of the legislature to say that the federal census only shall be the test.

Chapter 333, p. 577, Laws 1903, was a complete statute from the date of its enactment, and effected a present valid classification of counties. Its application to counties having the requisite population was not contingent upon the action of any body other than the legislature. It was not required to be adopted by the counties. It operated at once upon all counties of the state which by the then last state or federal census had the requisite population, and upon all counties which in the future, according to the state or federal census last taken, should appear to have acquired such population. As to such counties the taking effect of the law is made to depend upon an uncertain contingency. As a general proposition there is no longer any doubt of the right of the legislature to make a law which is complete in itself, and expresses the present legislative will, operative in the future upon the happening of some contingency.

In Sutherland, St. Const. (2d Ed.) § 71, the rule is stated in the following language: "The legislature, having the general power of enacting laws, may enact them in its own form when not restricted, and give them such effect, to be worked out in such a way and by such means as it chooses to prescribe. It may provide that a law shall go into effect at one time or another; absolutely or on condition; upon certain terms or on a certain event, or without regard to future events."

In Blanding v. Burr, 13 Cal. 343, 357, Justice Field said: "Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the legislature, in its wisdom, may impose. They may take effect only upon the happening of events which are future and uncertain, and among others the voluntary act of the parties upon whom they are designed to operate. They are not the less perfect and complete when passed by the legislature, though future and contingent events may determine whether or not they shall ever take effect."

To the same effect are State v. Sullivan, 67 Minn. 379, 69 N. W. 1094; Brig Aurora v. U. S., 7 Cranch, 382, 3 L. Ed. 378; Schulherr v. Bordeaux, 64 Miss. 59, 8 South. 201; Pueblo Co. v. Smith, 22 Colo. 534, 45 Pac. 357, 33 L. R. A. 465. That the contingency may be of so uncertain a nature as the future action of a foreign legislature is illustrated by the so-called retaliatory statutes, which have been enacted in many of the states. When the conditions render it necessary, the legislature may provide that the act shall take effect in the future as to certain persons at different times. Hopkins v. Scott, 38 Neb. 661, 57 N. W. 391; State v. Stuht, 52 Neb. 209, 71 N. W. 941.

The legislature had therefore the unquestioned right to provide that the act of 1903 should apply to certain counties, subject to the uncertain event of their acquiring in the future a population of two hundred thousand. The appellants do not question the validity of the act of 1903, but admit that the classification of counties for the purpose of legislation regulating the fees of county officers is proper. State v. Sullivan, 72 Minn. 126, 75 N. W. 8. The act applies to all counties within the class, and contains proper provisions for the future accessions to the class. If, by a consideration of law classifying cities on a basis of population, it be determined that another city or cities may at some future time, without the aid of additional legislation, enter or become a member or members of this particular class, the classification is a general one, and so is the law establishing it. State v. Baker, 55 Oh. St. 1, 44 N. E. 516.

Assuming, then, that the classification is proper, and that the legislature has the power to enact the law which is to take effect upon a future contingency, the question remains whether the amendment of 1905 violates the constitutional provision which forbids the legislature to enact any local or special law regulating the affairs of, or fixing or relating to the compensation, salary, or fees of, county officers, and requiring the enactment of general laws shall have uniform operation throughout the state. It must be conceded that, if the statute in question arbitrarily excludes certain counties which properly belong to the class established by the act of 1903, there is no escape from the conclusion that it is special legislation, and therefore unconstitutional. But we are satisfied that such is not the effect of the amendment, and that its validity,

when tested by well-recognized principles, is beyond serious question.

The application of the principle contended for by appellant would require legislation to be subjected to the test of a standard of uniformity which is an impracticable one for the everyday work of legislation. A certain temporary lack of uniformity and universality in the operation of the statute is the necessary and inevitable result of legislation which is to apply to the members of a fluctuating class. In fact it results from the essential test condition of valid classification. Unless provision is made for future acquisition to the class, the classification is arbitrary and objectionable; and this very requirement renders it certain that there will be at all times communities in one class with the necessary population for advancement to the higher class. Theoretically the transition from class to class should be automatic. It is imagined that parallel lines are drawn horizontally through the subject-matter, and that every statute which affects a part affects all of what is between these lines. The subject-matter is variable, fluctuating as population increases or decreases. A county or city should in theory become subject to the laws for the government of that class the instant the child is born which gives it the necessary population, but practically it must remain in the lower class until the fact of its population is determined by some reasonable method. It is thus inevitable that there will at all times be counties in the wrong class, but this does not affect the essential soundness of the theory of classification and the requirement of uniformity.

The time when a county acquires the necessary population to bring it within a certain class is a question of fact, and it is impossible to devise any method by which the exact time can be ascertained. It can only be approximated. The ordinary and reasonable way to ascertain the population of a community or county is to examine the census. But a census is only taken at intervals of several years, and it thus becomes necessary to assume, for purposes of legislation and the administration of laws, that the population changes only at the time when a new census is taken, and that it remains stationary during the intervals. Either a state or federal census is taken every five years, and as a result there is no practicable method of determining the population of large communities at more frequent intervals.

Taking the method provided by the act of 1903, which the appellant

concedes to be reasonable, and applying it to possible conditions, we may reach the same result as by the use of the method required by the amendment of 1905. The United States census was taken in 1900. Assuming that the legislature had passed the act a few days after the United States census was taken, and that Ramsey county had acquired a population of two hundred thousand a month thereafter, it would necessarily have remained in the lower class for almost five years, as the state census could not have been taken until 1905. Under the amendment of 1905 there are imaginable conditions under which the period would be extended to almost ten years. But after all it would be merely a matter of degree. Assume, however, that the last state census is made the only test of population, as in the statute construed in State v. District Court of Ramsey County, 84 Minn. 377, 87 N. W. 942. Legislation of this character, enacted immediately after the taking of a state census, would require counties which acquire the necessary population to come within the class a few days after the enactment to remain in the lower class until a new state census was taken, which would be almost ten years ahead, although, by the national census taken in the meantime, its actual population was disclosed.

It is thus apparent that there is no especial virtue in the plan of making the state census the test, to the exclusion of the national census. But if either one is to be taken as the standard, to the exclusion of the other, there are conceivable reasons why the legislature should designate the federal census. It is a matter of common knowledge that a federal census is generally more accurate and reliable than a state census taken under the exhilarating influence of local pride. A county, by loss of population, may lose its place in a certain class, as well as acquire a place through increase of population. It is possible, under the test provided for by the act of 1903, that a county might, by the population given by the state census, pass into a certain class, and that the next federal census, taken with greater care and discrimination, might reduce the population below the minimum required for membership in that class. It would then fall back into the lower class. The next state census might disclose an increase of population which a subsequent federal census might fail to discover. As population ceases to increase with the rapidity common in newly settled communities, it is very possible

that this imaginary condition may become a reality. The legislature may therefore have thought that it was more desirable to adopt a fixed standard by which to determine the contingency upon which the counties were to become members of the class which is governed by chapter 333, p. 577, of the Laws of 1903.

When the legislature passes a statute which cannot, as to certain counties, go into effect until the happening of some future contingency, it may provide a specific method for determining the future condition, or leave it to be ascertained by the officials or courts by any evidence which is sufficient to establish the facts in a court of law. The control of the legislature over the subject of evidence proper is generally subject to the limitation that it must not arbitrarily forbid the investigaton of facts. Vega Steamship Co. v. Consolidated Ele. Co., 75 Minn. 308, 77 N. W. 973, 43 L. R. A. 843, 74 Am. St. Rep. 484.

This statute does not deprive any one of the right to establish facts upon which his personal rights depend. It provides a simple, effectual, and reasonable method of determining the population, and the fact that it can be shown at intervals only does not affect the validity of the provision. As said in State v. District Court of Ramsey County, 84 Minn. 377, 87 N. W. 942, the power of the legislature to pass the law "carried with it, impliedly and of necessity, the right to prescribe any reasonable rule or method of determining whether or not a municipality which desired to act exceeded fifty thousand in population. Within certain limits the legislature could enact a rule of evidence whereby it might be ascertained whether a city had the prescribed number of people, and had, as a matter of fact, reached the open class provided for. * * * Surely any reasonable rule of evidence or method of ascertainment may be prescribed by the legislature whereby the right of a city to proceed under the law may be determined."

Possibly the method provided in the original act of 1903 was more reasonable and liberal than the more restrictive one of the amendment, but the wisdom or policy of a statute is for the legislature to determine. State v. Donaldson, 41 Minn. 74, 42 N. W. 781; Rippe v. Becker, 56 Minn. 101, 108, 57 N. W. 331, 22 L. R. A. 857. So long as no constitutional provision is violated, the responsibility for the result of a statute rests with the legislature, and not the court.

The act of 1903 applies to every county which, by the reasonable method provided by chapter 171, p. 221, of the Laws of 1905, has been shown to have the population necessary to make it a member of the class.

The constitutionality of chapter 194, p. 245, Laws 1905, amending chapter 365, p. 660, Laws 1903, is not directly involved in this action; but, as the question has been fully argued by counsel, we will say that no distinction can be made between it and chapter 333. Both are constitutional.

The judgment appealed from is therefore affirmed.