STATE v. CUDAHY PACKING COMPANY.[1]

February 28, 1908.

Nos. 15,391—(20).

**Taxation—Boards of Equalization—Notice to Taxpayer.**

The Minneapolis city board of equalization increased the defendant's original assessment by $10,000. Thereafter the state board further increased the assessment by $6,630. On appeal from the judgment for the full amount of the tax it is *held*:

1. Neither the courts nor any state official have the power to repeal or amend the clear and positive requirement of statute that all property shall be assessed at its true and full value in money.

2. That the tangible property of defendant was assessed at approximately its full value, although other property, in accordance with the direction of the state auditor, was assessed for less, is no valid objection to the resulting tax.

3. The Minneapolis board of equalization has charter power to amend the assessment roll by adding taxable property not included in the assessor's list.

4. The action of the city and state boards of equalization is designed to secure a just demand on the part of the city to be collected by proceedings judicial in their nature. The provisions with reference thereto, and especially with reference to the giving of notice of meetings, are directory, and not mandatory.

5. Failure to give such notice is no defense to a tax, unless it is shown to have resulted prejudicially, as in an unfair or unequal assessment.

On Petition for Reargument.

April 10, 1908.

**Assessment.**

In order that a tax on property should conform to the statute requiring its assessment at its full value in money, the revenue system of this state contemplates an original assessment by the assessor, its correction by the auditor, and its equalization by various boards.

**Appraisal of Value.**

That assessors, pursuant to instructions from the state auditor, have appraised taxable property at fifty per cent. of its value to enable the other tax officials named to perfect it and to produce a tax on its full value, does

[1] Reported in 115 N. W. 645, 1039.

not necessarily result in imposing upon a property owner a greater proportionate burden than he should bear.

**Equality of Taxation.**

While a tax law must aim at equality in taxation, approximation to equality in the actual result of its practical operation is all that can be had. That absolute equality is not attained is no defense to a proceeding by the state to collect a tax at admittedly less than the actual valuation of the taxable property of the resisting owner.

In proceedings in the district court for Hennepin county to collect from defendant personal-property taxes for the year 1905, delinquent April 1, 1906, the defendant made answer and prayed that the assessment on its property be reduced to $10,400. The matter was tried before Frederick V. Brown, J., who made findings, as stated in the opinion, and ordered judgment in favor of plaintiff for $891.99. Defendant's alternative motion to amend the findings or for a new trial was denied. From the judgment entered pursuant to the order therefor, defendant appealed. Affirmed.

*Moritz Heim,* for appellant.

*E. T. Young,* Attorney General, *A. J. Smith,* County Attorney, and *W. C. Leary,* Assistant County Attorney, for the State.

JAGGARD, J.

The trial court found that: The personal property of the defendant was valued at $10,400 by the assessor of the city of Minneapolis. Thereafter the city board of equalization increased that assessment $10,000. Thereafter the state board of equalization further increased the assessment by $6,630. The resulting tax of $810.90 was justly and properly levied. Judgment was accordingly entered for the tax, together with the penalty. This appeal was taken from the judgment. Defendant expressly admits: "In fact [it] had personal property consisting of cash, book accounts, and stock of all kinds, including the soap in storage, of the cash value of $27,902.77." The entire assessment was $27,030.

1. The defendant insists that the court will take judicial notice that property in this state is not assessed for its actual cash value; that the assessor assessed other personal property at fifty per cent., in pursuance of the instructions contained in the circular issued by the

state auditor; and that, inasmuch as the defendant was assessed for approximately the full value of its property, it had been discriminated against. There is obviously no merit in this contention. The statutes of this state distinctly provide that "all property shall be assessed at its true and full value in money." Section 810, R. L. 1905. Neither the state auditor nor the courts have the power to repeal or amend this clear and positive requirement.

2. Defendant also insists that the Minneapolis board of equalization had no power to make an original assessment, as it undertook to do in this case. The increase was in pursuance of the following resolution of the city board: "On motion, * * * a raise of $10,-000 was ordered assessed against the Cudahy Packing Company for goods in storage." The board of equalization by the charter (1) is given power to revise, amend, and equalize the assessment on the roll of the city assessor, and "(2) is vested with all the powers which are or may be vested in the county boards of equalization under the general laws of the state so far as applicable, but shall not be restricted by any limitation as in respect to reducing the aggregate sum of real or personal property as returned by the city assessor." County boards of equalization have not the power to make an original assessment. State v. Crookston Lumber Co., 85 Minn. 405, 89 N. W. 173. It is quite clear, however, that under the provision granting the power to revise, amend, and equalize the assessment the city board has power to amend by adding taxable property not included in the assessor's list.

3. Defendant also argues that the action of the Minneapolis board of equalization, and of the state board of equalization, also, in increasing the assessment, was invalid, because in both cases notice required by law to be given in such cases was not given. The argument is not tenable. The proceedings to collect taxes in this state are judicial. Official machinery is provided for the creation of a just demand on the part of the state to be paid by certain individuals or out of certain property. Opportunity is given for an objecting property owner to appear in court and to interpose any objection he may have, including that of unfair or unequal valuation. With respect to the collection of personal property taxes, one opportunity is certain-

ly given to appear and defend in court. Section 889, R. L. 1905. If this opportunity be not embraced, a further opportunity may be afforded. Section 893, Id. The statutory provisions which are intended to guide the conduct of officers in the transaction of public business, so as to insure the orderly and prompt performance of public duties, and which pertain merely to the system and dispatch of proceedings, are construed as directory. The provisions which affect the subsequent collection of the tax, and which are intended for the protection of the citizen by preventing the sacrifice of his property, and by the disregard of which his rights might be affected, are construed as mandatory. Kipp v. Dawson, 31 Minn. 373, 17 N. W. 961, 18 N. W. 96; Faribault Waterworks Co. v. County of Rice, 44 Minn. 12, 46 N. W. 143.

Under the judicial system, the equalization proceedings are designed merely to produce a just demand. Subsequent opportunity to defend against that demand on the ground of unfair or unequal valuation is allowed. Under the summary system, the means by which the taxpayer secures his day in court is often by appeal or resort to other remedy pending or following the action of the boards of equalization. In this state, accordingly, provisions relating to equalization are generally construed as directory, not mandatory. Failure to give notice, under the judicial system, becomes clearly material only when it is sought to bring the person or property into court. The mere failure of the assessor to notify the property owner and require him to list or return his taxable property (State v. Wm. Deering & Co., 56 Minn. 24, 57 N. W. 313), or the failure to give notice of hearing of boards of equalization (State v. Hynes, 82 Minn. 34, 84 N. W. 636), does not invalidate the assessment, in whole or in part. Indeed, the omission of equalization not resulting in unfair or unequal assessment is not a basis of objection in proceedings to collect. Scott Co. v. Hinds, 50 Minn. 204, 52 N. W. 523.

It was said in State v. District Court of Red Lake Co., 83 Minn. 169, 85 N. W. 1135: "It was immaterial that the various boards of review refused to reduce the amount of the assessment and that relators had no notice thereof. There was essentially only one question for the court to pass upon; and that was, what was the assessable

value of the property at the time the tax was levied?" In State v. Backus-Brooks Co., 102 Minn. 50, 112 N. W. 863, it was said: "The defendant, having failed to show that any irregularity or omission on the part of the state board of equalization or its secretary resulted in any prejudice to it, or that the taxes as levied against it were unequal or unfair, or based upon property it did not own, or that its property was assessed proportionately higher than other property of the same class, the defendant failed to establish any defense."

It follows that the failure of boards of equalization in this case to give notice is a mere irregularity, of which defendant cannot complain unless the tax sought to be collected was unfairly and unequally assessed. Section 919, R. L. 1905. This defendant has not shown. .

Our attention has been called to Raymond v. Chicago Union Traction Co., 207 U. S. 20, 21, 28 Sup. Ct. 7, 52 L. Ed. 15. In that case the corporation had paid the full amount of its taxes, based upon the same rate as that paid upon other property of the same class. A federal court of equity restrained the collection of the illegal excess resulting from the discrimination of a board of equalization, whose decisions were conclusive, except as proceedings for relief may be taken in courts. In the case at bar the action of the officials did not result in an illegal discrimination. This defendant is in no position to complain of the application of a tax rate universal throughout the state to his tangible property only at a valuation admittedly less than the law required. This, in another sense, is, for aught that appears in this record, a smaller tax than the defendant was legally subject to (State v. Western Union Tel. Co., 96 Minn. 13, 104 N. W. 567), and less than was imposed by law upon domestic corporations (section 838, R. L. 1905), because the tax on their shares of stock includes, in effect, the valuation of both tangible and intangible property as united in use.

Affirmed.

On April 10, 1908, the following opinion was filed:

JAGGARD, J.

On petition for rehearing, defendant urges that the decision previously rendered in this case violates article 4, § 2, of the constitu-

tion of the United States, by denying to the defendant, a citizen of Illinois, the privileges and immunities of a citizen of Minnesota, and also violates article 14, § 1, of the amendments to said constitution, by depriving the defendant of its property without due process of law, and by denying the defendant the equal protection of the laws. The questions thus involved have been fully presented to and considered by this court. In so far as the petition for reargument is addressed to the interpretation by this court of the power of the Minneapolis board of equalization and its power to assess property not on the assessment roll, there appears to be no occasion for further discussion. The gist of the remaining argument is (1) that the action of the board of equalization is illegal and inequitable, for it discriminates against this defendant by making him bear a greater burden of taxes proportionately than other taxpayers in this state; (2) that it practically denies defendant a hearing on the question of whether this assessment should be raised or not, by failing to give him due notice of its action.

1. It does not appear in this record that this defendant has been discriminated against. It is true that the state auditor directed an original assessment of fifty per cent. of the value of real and personal property, and that the city assessor testified that the assessment in Hennepin county was made on that basis as ordered. It might also be assumed, although it was not proved, that the assessors of other counties assessed in fact according to the same rule. The conclusion that in consequence there had been a "systematic, intentional, and illegal undervaluation of other property by the taxing officials" of the state does not at all follow. This order of the state auditor might appear to be in contradiction to the express statutory requirement that property should be assessed at its full value in money. As a matter of fact, on the contrary, however, it was designed and conduces to make possible literal obedience to the statute.

The result of the assessors' labors is not the final listing or valuation of property, real or personal. It is merely a step to that result. After the assessor has made the survey, his list and valuation, the county auditor corrects the verified result of his labors, as by addition of omitted property (section 853, R. L. 1905), and various boards

of equalization complete the work of creating a tax, conforming to statute, thereafter to be collected. More specifically, the state board of equalization is charged with the duty of equalizing the taxes between the various counties. A horizontal increase of a given percentage, covering all property of a specified kind assessed within a named county may be, and often has been, ordered. If such an increase were made, then property which had been returned by the assessor at its full valuation would ultimately bear a tax on one hundred per cent. plus the percentage of increase imposed by the state board. In consequence, either a grave practical injustice would result in the collection of the excessive tax, or the courts of the state would be overwhelmed with the hearings of alleged overvaluations. There would be imposed on the overtaxed individual the unnecessary and improper trouble and expense of appearing in court and defending. Inter alia, to give opportunity to the statutory boards of equalization to perform their functions, the instruction of the state auditor to assess at fifty per cent. of the value of the property was issued. The result of general obedience to the state auditor's order is a presumptively uniform valuation—an even basis for an ultimately correct tax list. The essential question to the taxpayer is whether, as a consequence of the work in the first place of the assessor and in the second place of the county auditor and of the boards of equalization, he is called upon to pay a tax on a larger valuation than the law authorizes. The tax is not unequal, and he has suffered no prejudice, as these terms are employed in the law. The immediate case itself is a good illustration. Defendant's original assessment was in fact less than fifty per cent. of the total valuation, which he admits; albeit accidentally. Two boards of equalization added enough to make his final assessment conform to the law. He has no cause for complaint.

It is urged that the court will take judicial notice of the fact that "it is the practice of assessing officials to (ultimately) return assessable property for taxation at one-half the cash value thereof." Unfortunately courts must take judicial notice of the fact that the ultimate assessment of real and personal property is extremely uneven and erratic, and that no certain percentage of actual value is attained. Large amounts of property, aggregating enormous values, are as-

sessed for more than their market value. Smaller amounts are taxed for a fraction of their real value not susceptible of definite estimate. The cases presented to the courts of this state tend to show that, for example, personal property in the rural districts is taxed on a higher average than personal property in large cities, and that real estate in large cities is taxed at a much higher valuation than in rural districts, and often for much more than its actual value. To a large extent these inequalities are inevitable. To exactly what extent, however, this condition exists, is a matter of controversy and conjecture. No definite knowledge on the subject exists, and no proof has here been adduced. We think no adequate proof could be practically produced.

It is elementary that, while a tax law must aim at equality, approximation to equality is all that can be had. Cooley, Taxn. (1st Ed.) 127; Davis v. City, 55 Iowa, 549, 8 N. W. 423. Absolute equality is not possible. "If equality were practicable," said Chief Justice Gibson in Kirby v. Shaw, 19 Pa. St. 258, 261, "in what branch of the government would power to enforce it reside? Not in the judiciary, unless it were competent to set aside a law free from collision with the constitution, because it seemed unjust. It could interpose only by overstepping the limits of its sphere, by arrogating to itself a power beyond its province, by producing intestine discord, and by setting an example which other organs of the government might not be slow to follow. It is its peculiar duty to keep the first lines of the constitution clear, and not to stretch its power in order to correct legislative or executive abuses. Every branch of the government, the judiciary included, does injustice for which there is no remedy, because everything human is imperfect. The sum of the matter is that the taxing power must be left to that part of the government which is to exercise it." The courts will not substitute their judgment as to valuation for that of the board of equalization. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663. The local assessment cases recently decided by the supreme court of the United States emphasize the extent to which the taxing power is legislative and executive in character, and how limited is the function of courts to interfere with its exercise, in a particular case. See, for example, French v. Barber

Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879. And see Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197.

The certain purpose of the law of this state requiring a full valuation to produce equality is evident in the intention of the very instruction of the state auditor to which objection has been so strenuously urged here. The result of the operations of the official bodies here was a tax at a rate applying uniformly throughout the state on a valuation admittedly less than the taxable property defendant owned. It is entirely clear that in this case no attempt whatever was made to discriminate between different classes of property owners. The same rule applied indifferently to residents and nonresidents.

2. Defendant was not denied a hearing, within the meaning of the state and federal constitutions. It is the lawmaking power, and not the judiciary, which is to determine all questions of discretion or policy in ordering or imposing taxes, and which must make all necessary rules and regulations and decide upon the agencies by means of which a tax shall be created and collected. Mr. Justice Shiras, in Thomas v. Gay, 169 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740. It was not necessary that the board of equalization should have given notice of its increase. State Railroad Tax Cases, supra. It is unnecessary, however, to discuss the extent to which such notice is necessary, because the property owner had the right to appear before the boards of equalization at definitely stated times, and was given certain opportunity to appear in court and defend. Section 889, R. L. 1905. Indeed, it is natural to inquire, how did the defendant raise the objections now under consideration? The answer is clear: By embracing the opportunity afforded by statute to come into court and interpose the very defense which the demonstrated ingenuity of counsel has formulated. Moreover, the taxpayers' remedy of paying under protest the tax claimed to be unjust or illegal, and of bringing an action for the recovery of the sum, is preserved by statute. Section 891. "What more [opportunity] ought to be given?" Mr. Justice Peckham, in Security Trust & Safety Vault Co. v. City of Lexington, 203 U. S. 323, at page 333, 27 Sup. Ct. 87, at page 90, 51 L. Ed. 204. Cf. Central of Georgia Ry. Co. v. Wright, 207 U. S. 127, 28 Sup. Ct. 47, 52 L. Ed. 47.

We conclude: No taxpayer can successfully base a defense to a proper tax upon a charge of general official derelictions unproven and conjectural. The courts will not require that assessments be made in violation of law, will not impose the duty of committing perjury on tax officers, and will not pervert their own functions by repealing a just and valid statute, which requires an assessment of all taxable property at its full value in money, by making the enforcement of that statute impossible.

Petition for reargument denied.