## INDEPENDENT SCHOOL DISTRICT NO. 35, ST. LOUIS COUNTY, AND OTHERS v. WALTER H. BORGEN. INTER-STATE IRON COMPANY AND OTHERS, INTERVENERS.[1]

December 23, 1932.

No. 29,332.

[1]Reported in 246 N. W. 119.

*Austin & Wangensteen,* for appellant school district.

*Charles E. Adams,* for respondent county auditor.

*Mitchell, Gillette, Nye & Harries, William K. Montague,* and *Baldwin, Holmes, Mayall & Reavill,* for respondent-interveners.

STONE, J.

Mandamus. Unsuccessful below, relators appeal from the judgment.

In 1932 Independent School District No. 35, St. Louis county, in addition to providing $131,250 for payment of outstanding bonds and $24,412.50 for bond interest, levied $105,900 for teachers' salaries and other cost of instruction, and $223,540 "for other general purposes of said school district including the sum of $83,540 shortage from 1931 levy by reason of failure of county auditor to spread said amount of the levy as made by the board." These two items total $329,440. Before extending the levy, defendant Borgen, auditor of St. Louis county, reduced to $176,460 the two items last mentioned. The mandamus wanted was to compel him to spread the levy as made. It was sought upon the hypothesis of the unconstitutionality of L. 1921, p. 646, c. 417, G. S. 1923 (1 Mason, 1927) § 2061, et seq. which if valid required the county auditor to reduce the levy as he did.

The 1921 law is entitled:

"An act to limit the annual levy of taxes in all cities, villages and school districts in the State of Minnesota."

Section 1 deals with taxes of cities or villages; § 2 with those of school districts. It fixes a maximum of "sixty dollars per capita of the population of such school district" upon the annual tax levy "for all general and special school purposes whatsoever including the county school tax of one mill * * * but exclusive of any state levy." The exceptions of § 3, of taxes to meet outstanding indebtedness and finish pending construction, are not here involved. Section 4 declares that the last state or federal census shall be conclusive on the question of population, unless upon resolution, in the case of a school district of the school board, there shall be taken by the secretary of state a special census of the district and the result certified back to the school board.

In Minnesota there are some 7,800 school districts, of which only 45 (relator district No. 35 being one of them) have boundaries coincident with those of any federal census enumeration district or any group of such districts. There has been no state census for many years. The last federal census, that of 1930, disclosed that relator district then had a population of 2,941. Under the law of 1921, that limited its general tax levy to $176,460, beyond which respondent county auditor refused to extend it.

The boundaries of census enumeration districts coincide with those of incorporated cities and villages, organized towns or fractional parts thereof, and unorganized "congressional townships" when convenience dictates such practice. Addresses are recorded by the enumerators where residences are upon named or numbered streets or roads. Otherwise the place of residence within the district is not recorded. In all cases residences on a given road or in a given locality are reported in the order visited by the enumerator.

"Where the boundaries of any particular school district in Minnesota are not coterminous with the boundaries of any census enumeration district or group of such districts the census returns themselves do not disclose the population of such school districts * * *

nor could the officials of the census bureau furnish a certified statement of such population, but from the census returns or enumerator's lists and information which it is lawful and customary for the bureau of census to furnish the school board of any such district could without a great amount of labor or expense determine the population of such school districts."

For relators the argument is that the law "is unconstitutional, first, because it is arbitrary and special legislation, and secondly, because it does not operate uniformly; also, that the act is unworkable and does not provide a method of determining the population in the great majority of school districts where the boundaries are not coterminous with other political subdivisions."

■ We see nothing "special" about either the law or its operation. It applies in terms of prohibition to every school district in the state. Matter of legislative judgment is the limitation upon school tax levies in respect to population of the whole district rather than the number of students receiving instruction. Either basis is germane to subject matter. There is so direct and so fairly constant relation between population and number of children of school age that nothing more need be said in support of legislative right to adopt either as basis for fixing per capita maxima for tax levies for school purposes. No district is compelled to tax to the limit. Each may stay as far below as local necessity or economy may dictate. Reasons for the law are well known. The policy of the law is for legislative rather than judicial consideration. The legislature has put the $60 per capita maximum upon all districts in this state without exception. Obviously, so far there is no appearance of special legislation.

■ It is argued that § 4 gives to each district the option of choosing between "the last respective state or federal census" and a special, local census; that the districts are permitted, not required, to take the local census; and the last federal census may be the basis for computing the total tax levy in one district, whereas the special local census may be the basis in another. So, the argu-

ment concludes, there will result an unconstitutional lack of uniformity.

If there is permission, and nothing more, for a local census, there is but the grant of a power. It is a grant to all districts alike. It is not given to some and withheld from others. In contrast with Stevens v. Village of Nashwauk, 161 Minn. 20, 200 N. W. 927, this it not a case where there is attempt to give a municipal corporation the privilege of saying whether or no as to it the law shall be effective. But we need not decide whether the provisions for the local census are mandatory or permissive. If permissive only, what of it? Population remains determinative. It is too much to expect that any enumeration of population in large numbers will be accurate, or, if it is, that it will long remain so. There may be substantial changes up or down, and they may not be gradual. Local conditions may, and frequently do, result in sudden and large decreases or increases. Of all that the legislature knows as well as anyone. The lawmakers understood as well as counsel that the boundaries of few school districts coincide with those of any enumeration district or group of them. The problem of selecting bases for ascertaining population was a practical one for the lawmakers. Their solution of it is not objectionable on constitutional grounds if it works out reasonably. State ex rel. Roche v. Rogers, 97 Minn. 322, 106 N. W. 345.

The population basis mandatory and the law so far unquestionably good, it does not become bad because there cannot be exactness of enumeration or because perchance there may be an enumeration in one district substantially accurate and one in another district far otherwise. The authorization of a local census is intended to meet conditions, however arising, which may make use of the last government census result in understatement. The privilege was given to each district, and to all alike, as far as possible to insure accuracy, and make its count fit the fact. Neither the privilege nor any lawful use that can be made of it will result in putting some districts in one class and others in another under the law. All will remain subject to the statute in precisely the same manner. The

only possible difference will be that in some districts the population count may be out of line with truth, while in others it will be substantially in agreement therewith. That sort of thing is unavoidable in the operation of all general laws. It is the sort of discrepancy that cannot be prevented. In the constitutional sense, neither equality, nor its substantial equivalent, uniformity, demand mathematical exactitude. The accuracy of equation, the agreement of proportion, and the nicety of perfect balance are all impossible and therefore not required. The demand of equality is satisfied if the rule adopted "will generally, and unless with accidental exceptions, apportion the burden justly, or with such approximate justice as is usually attainable." Noonan v. City of Stillwater, 33 Minn. 198, 203, 22 N. W. 444, 446, 53 Am. R. 23; In re Improvement of Third Street, 185 Minn. 170, 178, 240 N. W. 355. Even where there is outright classification, it is enough if it be "fair and reasonable and practicable and results in substantial equality." Technical accuracy is neither essential nor usual, so "resultant inequalities are tolerated." Seamer v. G. N. Ry. Co. 142 Minn. 376, 383, 172 N. W. 765. Reduced to its lowest terms, the argument for relators would condemn the law unless it insured substantial accuracy of population count in all districts. It is not so intended, but carried to its logical conclusion the argument is just that. The constitutional requirement of equality and uniformity does not demand any such impossible nicety of exactness. It requires only that degree of equality of burden and uniformity of operation reasonably attainable in the adjustment of rights and duties dealt with by the law.

■ Finally it is contended that the law "does not provide a complete workable plan" and so must fall for sheer impossibility of enforcement. There seemingly is overlooked the fundamental that the executive department has competency and functions just as exclusive and of as great dignity as those of lawmakers or judges. The executive does not need to be led around every corner. So a law does not fail simply because it does not furnish the executive with detailed specifications and working plans covering all minutiae of application and enforcement. It is ordinarily enough that a statute

require the stated result without saying how it shall be attained. As said below:

"What the law intended to give effect to was the state or federal enumeration or count and if, from the information that can be obtained from the census bureau, the part of the count within the actual geographical boundaries of any particular school district can be ascertained, then that enumeration or count is conclusive. It seems to me that it would be a simple matter for any school board, familiar as it must be with the physical boundaries of the district on the ground and the inhabitants of the district, to separate those counted within the district from those counted without, and when this is necessary it is presumed that it will be done."

In other words, the lawmakers correctly supposed that the governing boards of cities, villages, and school districts know their own constituents well enough not to find it impossible, with information obtainable from the federal census bureau, to ascertain with satisfactory approximation to accuracy the population of their own subdivision even though its boundaries are not coincident with an enumeration district or group of them. The comparative ease with which that task can be accomplished by the local board and verified by or on behalf of the county auditor seems to us too plain to need elaboration. Anyway, it was established as fact below, and that is enough for us. The law has worked through a decade. This is the first time it has been intimated that it is unworkable. The argument really suggests the contrary—that the statute is working a bit too well in some cases. It may be that local hardship will result. The resulting compelled retrenchment may be painful. That phase of the matter is not for us. The law being within the constitutional competency of the legislature, obedience must be yielded, however uncomfortable for some may be the resulting loss of opportunity for the spending of public moneys.

Judgment affirmed.