# IN RE PETITION OF HARRY C. HAMM AND ANOTHER v. STATE.

95 N. W. (2d) 649.

March 6, 1959—Nos. 37,594, 37,595.

*Gordon Rosenmeier, John E. Simonett,* and *Donald O. Wright,* for appellants.

*Attell P. Felix,* County Attorney, for respondent.

MATSON, JUSTICE.

In each of two actions consolidated for trial brought under M. S. A. c. 278 to contest the validity of the assessment of real estate taxes for the years 1954 and 1955, petitioners appeal from an order denying a new trial.

Two issues arise as to whether the taxes levied are invalid; first, on the ground that petitioners' property was *unequally* assessed and, secondly, on the ground that such property was assessed at a valuation greater than its real or actual value. Ancillary to the issue of inequality of assessment is the question of whether State v. Cudahy Packing Co. 103 Minn. 419, 115 N. W. 645, 1039, is to be overruled.

Petitioners own as joint tenants commercial property on Broadway Avenue East in Little Falls, Minnesota. This property consists of three buildings occupied by two retail grocery firms, a furniture store, and a Sears Roebuck store. Four small apartments are located on the upper floors of one of the buildings. The apartments and the various retail business units—except the furniture store operated by petitioners personally—are occupied by lessees of the petitioners.

In 1950 the full and true value of this property was assessed at $22,750; in 1952 it was raised to $23,755; and in 1954 it was raised to $38,300. Petitioners paid the taxes for 1954 and 1955 under protest and filed petitions in these proceedings for review of the tax assessment for these two years. M. S. A. 278.01.

Despite § 273.11, which provides that as a basis of taxation all

property shall be assessed at its full and true value in money and not according to any lower standard of value, it is the practice in this state, as it is in most states, to assess property systematically and uniformly at a percentage of its full and true value.[1] In accord with this well-established practice petitioners' property was assessed on a percentage basis. Section 272.03, subd. 8, defines "full and true value" as:

"* * * the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale."

Under this definition the full and true value means the fair market value of such property—the price that could be obtained in a private sale between a willing seller and a willing buyer.

The primary issue of invalidity because of inequality in assessment rests upon plaintiffs' contention that the assessor failed to apply to all commercial property in his taxing district a uniform percentage of market value. Plaintiffs further assert that, although plaintiffs have been assessed at less than 100 percent of the market value of their property, they have, nevertheless, been saddled with a disproportionate share of the tax burdens since they were assessed at a higher percentage than other owners of commercial property in the taxing district.

We turn to the evidence. The county assessor, who said he supervised and instructed the city assessor and reviewed his assessments,[2] testified that the market value of petitioners' property was $118,000 and that $32\frac{1}{2}$ percent thereof was taken as the full and true value for taxation purposes. The city assessor, however, said that he placed a market value of $110,000 on petitioners' property and took 28 percent thereof as the taxable value. He also said that he did not use the same percentage for other parcels of commercial property and that the actual percentage used could vary considerably from property to property depending on the condition of the building, its location, and other factors entering into salability. Although he declared that the 28 percent of market value

---

[1]Lindahl v. State, 244 Minn. 506, 70 N. W. (2d) 866; State v. Thayer, 69 Minn. 170, 71 N. W. 931; cf. §§ 273.11 and 273.13.

[2]As to statutory duties of county assessor, see § 273.071, subd. 14.

applied to petitioners' property was not higher than the percentages applied to other property, he admitted that other commercial parcels might be assessed as high as 38 or 40 percent of their market value. In short, the percentage yardstick for determining full and true value for taxation was not uniform but varied from 28 to 40 percent of the market value.

After the case had been tried, a letter written by the city assessor was by stipulation submitted to the court stating what he would then testify to by way of correction if he were recalled to give additional testimony. In this letter he said that according to a state survey report commercial property in Little Falls had been assessed at an average percentage of 37.16 percent for 1954; that in establishing $38,300 as the full and true taxable value of petitioners' property, he used a percentage of 34.81817 of its market value; and that his original testimony as to 28 percent resulted from confusing petitioners' assessment *with some other assessment*. The letter served to emphasize that no reasonably uniform percentage was followed in establishing the value of commercial property for taxation and that petitioners' property had been taxed at a higher percentage than that of other owners of commercial property.

The trial court in its findings and order for judgment, after characterizing the city assessor's percentage of 34.81817 as fantastic, found that the market value of petitioners' property was $104,000, and that the city assessor in 1954 used an average percentage of 37.16 of the market value. The trial court in its memorandum, made a part of its findings and order for judgment, observed that if the city assessor had fixed the market value at $104,000 and had applied the average percentage of 37.16, he would have arrived at a full and true value of $38,646, which was substantially the same as the $38,300 figure set by the county assessor.

Apparently the trial court assumed that if petitioners' property was taxed upon a percentage base which was substantially the same as the *average* percentage applied to other commercial properties, they were not adversely affected. This assumption is wholly illusory as a basis for a finding of uniformity and for a conclusion that the taxpayer has not been adversely affected through inequality. Obviously, an average percentage may be made up of widely different percentages and may indi-

cate nothing as to uniformity. Some taxpayers may be taxed as low as 10 percent of market value and others as high as 60 or 70 percent and yet the average could be 37.16. It is true that the county assessor testified that he had *tried to follow* the percentage established by state surveys and that a municipal journal report for 1952 (not 1954) showed for commercial property in Little Falls an average percentage of 37.16. This testimony is entitled to little weight in view of other positive testimony unmistakably showing that a variation from 28 to 40 percent of market value was used. We can only conclude that the evidence does not sustain the trial court's findings that petitioners were not unfairly and unequally assessed.

As a basis for finding a market value of $104,000, the trial court, disregarding the opinion of the county assessor's market valuation of $118,000 and the city assessor's valuation of $110,000, adopted the estimate given by the state's other witness, the president of the Little Falls City Council. Petitioners' three witnesses, however, testified that the property had a market value of only between $75,000 and $85,000.

■ Although petitioners were unfairly and unequally assessed because of the assessor's applying to their property a percentage substantially higher than that applied to the market value of other commercial property, it is clear that the full and true taxable value so ascertained was, in any event, less than the property's actual market value. In the light of our holding in State v. Cudahy Packing Co. *supra,* the question arises whether petitioners, despite such inequality of assessment, have any standing to complain as long as their property was assessed at a full and true value less than its actual or real market value. In the Cudahy case, decided 50 years ago, this court refused to grant relief to a taxpayer whose property was assessed at its approximate market value even though other property of the same class was assessed at far less than market value. The Cudahy case is clearly wrong in giving validity to a principle which denies relief to a taxpayer who is saddled with a substantially disproportionate share of the tax burden as a result of inequality in assessment. It is immaterial whether a fatal inequality in assessment comes from taking as the property's full and true value a proportion or percentage of its real market value which is substantially in excess of the proportion or percentage applied to other property of

the same class or, if, as in the Cudahy case, it stems from an intentional initial overvaluation of one piece of property in substantial excess of the market valuation placed on the property of other taxpayers. The Cudahy decision clearly violates Minn. Const. art. 9, § 1, which provides that:

"* * * Taxes shall be uniform upon the same class of subjects, * * *."

In fact, since 1923, the Cudahy case, although not expressly overruled by this court, has by reasonable implication been overruled by the decision of the United States Supreme Court in Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. ed. 340, wherein it was held under U. S. Const. Amend. XIV, with respect to a Nebraska tax levy, that an intentional and arbitrary assessment of the property of one owner for taxation at its true value, in accordance with the state constitution and laws, while all other like property is systematically assessed much lower, is a denial of the equal protection of the laws in contravention of the Nebraska Constitution requiring uniformity in the placement of tax burdens. In the Sioux City case the court, in quoting from the earlier case of Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 352, 38 S. Ct. 495, 62 L. ed. 1154, 1155, said (260 U. S. 445, 43 S. Ct. 191, 67 L. ed. 342):

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property."

It was further said in the Sioux City case (260 U. S. 446, 43 S. Ct. 192, 67 L. ed. 343):

"* * * This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed *even though this is a departure from the requirement of statute.* The conclu-

sion is based on the principle that *where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.*" (Italics supplied.)

■ The right to uniformity and equality is the right to equal treatment in the apportionment of the tax burden. Uniformity of taxation does not permit the systematic, arbitrary, or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property of the same class. Neither does uniformity permit the adoption of an arbitrary yardstick of valuation for all properties which ignores their differences in actual market value.[3]

■ It follows that discrimination in the imposition of the tax burden, resulting from systematic, arbitrary, or intentional undervaluation of some property as compared to the valuation of other property in the same class, violates the uniformity clause of Minn. Const. art. 9, § 1, and the equal-protection clause of U. S. Const. Amend. XIV, even though the property so discriminated against be not assessed higher than its fair market value adopted as a uniform basis in the making of assessments.[4] Uniformity and equality in a constitutional sense does not require mathematical exactitude in the valuation of property for taxation.[5] Absolute equality is impracticable of attainment and the taxpayer may not complain unless the inequality is substantial. Mere errors of judgment in estimating market value of property usually will not support a claim of discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of tax assessment officers and the validity of their actions are presumed, and the burden of proof of overcoming

[3]See, Cumberland Coal Co. v. Board of Revision of Tax Assessments, 284 U. S. 23, 52 S. Ct. 48, 76 L. ed. 146.

[4]See, Sioux City Bridge Co. v. Dakota County, *supra;* Cumberland Coal Co. v. Board of Revision of Tax Assessments, *supra;* 1 Cooley, Taxation (4 ed.) § 295; Brooks Bldg. Tax Assessment Case, 391 Pa. 94, 137 A. (2d) 273.

[5]Independent School Dist. No. 35 v. Borgen, 187 Minn. 539, 544, 246 N. W. 119, 121; Baldwin Const. Co. v. Essex County Bd. of Taxation, 16 N. J. 329, 108 A. (2d) 598.

such presumption rests upon the complaining party.[6] Good faith alone does not, however, justify an assessment which is discriminatory in fact.[7]

Once, however, a discriminatory assessment is established, the burden of removing the discriminatory levy rests upon the state. In Hillsborough v. Cromwell, 326 U. S. 620, 623, 66 S. Ct. 445, 448, 90 L. ed. 358, 363, the court said in discussing the equal-protection clause of Amend. XIV:

"* * * The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class."

■ Since the Cudahy decision violates the uniformity clause of Minn. Const. art. 9, § 1, and the equal-protection clause of U. S. Const. Amend. XIV, it is hereby expressly overruled in so far as it conflicts with the principles expressed in this opinion. Upon the present record we conclude that petitioners' property was assessed in a discriminatory manner which resulted in substantial inequality in the apportionment of the tax burden. The record, however, is inadequate and contains much confusing testimony which needs clarification through the holding of a new trial in the light of the principles set forth in this opinion.

The order of the trial court is reversed and a new trial is granted upon all issues, inclusive of the issue as to the actual or real market value of the property.

Reversed.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On April 10, 1959, the following opinion was filed:

---

[6]Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 353, 38 S. Ct. 495, 62 L. ed. 1154, 1156; Sinclair Prairie Oil Co. v. State, 174 Okl. 109, 50 P. (2d) 150.

[7]See, McCluskey v. Sparks, 80 Ariz. 15, 291 P. (2d) 791.

PER CURIAM.

Petitioners appeal from the clerk's disallowance of their taxation of costs and disbursements. Since the state in levying and collecting taxes acts in its sovereign capacity, costs and disbursements cannot be taxed against it except as provided by law.[8]

If petitioners are entitled to an allowance of their costs and disbursements herein, the legal basis for such allowance must be found in M. S. A. 278.07. This section, which is applicable to tax contests, expressly provides for a taxation of costs and disbursements in only three different situations and each of these situations contemplates the entry of a judgment. Under the second sentence of § 278.07, we have the first situation, which arises when the contesting taxpayer is wholly unsuccessful and judgment is entered against him for the full amount of the tax levy. In that case costs and disbursements *shall* be taxed against him. The second situation arises under the third sentence of § 278.07 when the taxpayer is partially successful in his contest so that judgment for delinquent taxes is entered against him for less than the full amount of the tax levy. In that case the court, *in its discretion,* may award taxpayer his costs and disbursements. Obviously neither of the two foregoing situations apply in the instant case.

The third situation permitting an allowance of costs and disbursements arises under the final sentence of § 278.07, which reads as follows:

"* * * If there be *no judgment for taxes,* a judgment may be entered determining the right of the parties and for the costs and disbursements as taxed and allowed." (Italics supplied.)

Clearly, the final sentence comes into operation only where the contesting taxpayer has established that no judgment for delinquent taxes may be entered against him. In that case, and in that case only, a *judgment* may be entered determining the rights of the parties and for the costs and disbursements as taxed and allowed. We do not have that situation in the instant case. Petitioners have not prevailed to the extent that they have no liability for taxes so that no judgment for taxes may be

---

[8]State, by Peterson, v. Bentley, 224 Minn. 244, 28 N. W. (2d) 179, 770.

entered. The question of whether a judgment may be entered for taxes has been deferred pending the outcome of the new trial granted to petitioners. In the meantime, no judgment may be entered for a determination of the rights of the parties. In the absence of an entry of judgment or of a present right to enter judgment, there can be no allowance of costs and disbursements pursuant to § 278.07.

The clerk's disallowance of taxation of costs and disbursements is affirmed.