566 P.2d 688

COUNTY OF MARICOPA, Maricopa County Board of Supervisors and Maricopa County Assessor, and State of Arizona, State Treasurer of Arizona, Arizona Department of Property Valuation and State Tax Commission, Appellants,

v.

NORTH CENTRAL DEVELOPMENT COMPANY, a partnership, and First National Bank of Arizona, a National Banking Association, Appellees.

No. 1 CA–CIV 3095.

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 22, 1977.

Supplemental Opinion May 26, 1977.

Review Denied July 12, 1977.

WREN, Judge.

This appeal concerns the assessment of appellees' partially completed buildings for property tax purposes for the 1971 tax year. Appellees had urged a number of grounds for the reduction or elimination of the tax before the Superior Court but the argument this Court finds dispositive is that the taxing of appellees' properties in 1971 constituted unconstitutional discrimination in violation of the Uniformity Clause, Article 9 § 1 of the Arizona Constitution and the Equal Protection Clause of the United States Constitution.

Prior to the 1971 assessment, the Maricopa County Assessor's Office had not valued partially constructed buildings for property tax purposes except to the extent that they were capable of occupancy. In October 1970, the Director of the State Department of Property Valuation issued a directive to the County Assessor that all partially completed buildings be valued and taxed for the 1971 tax year. This valuation had to be completed by January 1, 1971. A.R.S. § 42–221 B.

Harold Huff, the deputy county assessor in charge of commercial properties, testified that, in light of the shortness of time, it was impossible for the personnel in the Assessor's Office to fully comply with the directive by January 1, 1971. In his testimony, Huff described the system employed by the assessors prior to receiving the directive to assess all partially completed structures, and the efforts that were made at compliance for the 1971 tax year in the commercial property section.

After a building permit had been issued, a copy would be sent to the Assessor's Office where it was noted on a card which designated the parcel where the construction was to take place. These cards were then sent to an assessor who visited the site and made an estimate of the completion date of the construction. A call-back system was maintained whereby in the month

Beer, Kalyna & Simon by Olgerd W. Kalyna, and Bruce E. Babbitt, Atty. Gen. by Ian A. Macpherson, Asst. Atty. Gen., Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Jeffrey B. Smith and Streich, Lang, Weeks, Cardon & French by Dan M. Durrant, William S. Hawgood II, Phoenix, for appellees.

of estimated completion, the property card would again go out to an assessor. The property was revisited and if construction was complete, the property would be assessed at its increased value. If construction were not finished, another estimate was made and the card would return to the call-back system.

At the time the directive was received, Huff testified that the assessors were working with the November and December call-backs; that is, properties estimated for completion in November and December, 1970. These call-back properties that were still not complete were assessed, pursuant to the directive, as partial completions for 1971. In addition, those properties that the assessors knew were under construction, or were observed by them in their travels around the county, were assessed for 1971 as partial completions. All those properties which had estimated completion dates in 1971 and were cataloged in the call-back system were not pulled and valued. Huff agreed that if all these call-backs had been checked, substantially all partial completions in Maricopa County would have been found. As it was, only 35, a small percentage of the partially completed commercial properties, were assessed.

Huff agreed with this summation of his department's efforts:

"Q. So would it be accurate to say that most of the partially completed construction that was left off the rolls for the 1971 year were those constructions that were not probably mostly complete because they weren't in the November and December call-back and those properties which were not so major that they didn't just come to mind by virtue of your experience in the field?"

There was further testimony from the assessor in charge of apartment projects that between 30 and 35 partially completed apartment buildings had been assessed for the 1971 tax year. He was sure he had assessed all the big projects because he had kept notes on them. The assessor of residential properties testified that no attempt had been made to assess partially completed residences by January 1, 1971. However, an effort was made in mid-1971 to pick up some of the partial completions as escaped properties pursuant to A.R.S. § 42–236 D.

The trial judge found that the Maricopa County Assessor had failed to assess a substantial majority of partially completed residential and commercial structures for the 1971 tax year. He further found that the limited efforts of the assessors were directed primarily and purposefully at the few large commercial structures and that no effort had been made to insure uniformity. The utilization of such a system of assessment had discrimination built into it and resulted in a substantial inequality and lack of uniformity. The judge concluded that these systematic and intentional practices resulted in a discriminatory tax in violation of the Arizona and United States Constitutions and could not be sustained, irrespective of the assessors' honest motives, because the result of their intentional acts was discrimination.

We have concluded that the judgment of the trial court must be sustained and that the finding of discriminatory assessment is fully supported by the evidence.

 A threshold question to our consideration of the discrimination issue is whether partial completions are subject to tax under Arizona law. The Arizona Constitution Article 9 Section 2(C) provides:

"Section 2(C). All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law. This section shall be self-executing."

Exemption from taxation is the exception and not the rule in Arizona and the party claiming that property is not subject to taxation has the burden of showing some specific provision of law that unequivocally sustains the contention of non-taxability. *State of Arizona v. Yuma Irrigation District*, 55 Ariz. 178, 99 P.2d 704 (1940). No exemption for partially completed buildings has been provided by statute, A.R.S. § 42–

271, and we believe that the assessment of partially completed buildings is clearly within the intent of Arizona law. *See Wagner v. Board of Review of City of Glenwood,* 232 Iowa 58, 4 N.W.2d 405 (1942); *Esto Real Estate Corp. v. Louisiana Tax Com'n.,* 170 La. 649, 129 So. 117 (1930); *Union Portland Cement Co. v. Morgan County,* 64 Utah 335, 230 P. 1020 (1924).

■ Turning to the issue of discriminatory assessment, the leading Arizona case is *McCluskey v. Sparks,* 80 Ariz. 15, 291 P.2d 791 (1955). In that case the Supreme Court noted that systematic and intentional disproportionate valuation of property constitutes discrimination in violation of the Uniformity Clause of the Arizona Constitution and the Equal Protection Clause of the United States Constitution. The party claiming discrimination must show that the unequal assessments were the result of systematic and intentional conduct on the part of the assessing official and not mere errors in judgment. The fact that the assessors believed their conduct valid will not render it less vulnerable to attack as discriminatory. If the result of the intentional acts is discrimination, the assessments cannot be sustained irrespective of honest motives. *Sparks v. McCluskey,* 84 Ariz. 283, 327 P.2d 295 (1958); *Hamm v. State,* 255 Minn. 64, 95 N.W.2d 649 (1959).

In the recent decision of *Security Properties v. Arizona Department of Property Valuation,* 112 Ariz. 54, 537 P.2d 924 (1975), the Supreme Court reiterated that to establish an unconstitutional assessment, it must be clearly shown that the unequal assessments are the result of systematic and intentional conduct in the sense that the inequality would thereby be deliberately created.

In the instant case, the testimony clearly established that the assessors made no effort to value all partial completions. Harold Huff admitted that had all call-backs been checked, substantially all partial completions of commercial buildings could have been found. Instead, due to time and staff limitations, only those properties which were due for completion or those which were known by his office to be under construction were assessed for 1971. This intentional scheme necessarily resulted in the assessment of only the few more prominent construction projects. The assessor of apartment projects also admitted that he attempted to assess the big projects first and the residential assessor testified that no attempt was made to assess any partially completed residences by January 1, 1971.

[4] This intentional plan for assessment of partial completions resulted in the vast majority of partial completions being omitted from the 1971 tax rolls. This fact is clearly evidenced by the limited survey done by appellees which demonstrated the large percentage of omitted partial completions in selected areas of the county. Taxing authorities may not single out some taxpayers for selective enforcement of tax laws that apply equally to all similarly situated taxpayers. *McCluskey v. Sparks,* supra; *Penn Philips Lands, Inc. v. State Tax Com'n.,* 247 Or. 380, 430 P.2d 349 (1967).

Although, it may very well be that the assessing officials could not have done anymore by January 1, 1971, the fact remains that the result of their intentional conduct was discrimination against the more substantial partial completions and in particular, discrimination against appellees.

Appellant has attempted to characterize the limited assessment of partial completions in 1971 as comparable to a cyclical revaluation program which has withstood constitutional muster. *Hillock v. Bade,* 22 Ariz.App. 46, 523 P.2d 97 (1974), approved 111 Ariz. 585, 535 P.2d 1302 (1975). The two situations are not analogous.

In determining that a cyclical revaluation plan did not constitute arbitrary and intentional discrimination, the court in *Hillock v. Bade,* supra, considered the total inability of the Pima County Assessor to complete a revaluation in one year, the closely structured and programmed three year plan which had been adopted and met and the inverse discrimination which would result if those properties which were valued in the first year were not included on the tax rolls at their increased valuation until the com-

**544**

pletion of the revaluation plan. Discrimination would result because those properties valued in the first year would be undervalued as compared to properties valued subsequently due to the effects of annual inflation and as compared to properties of other taxpayers in the state where assessments are current. While cyclical revaluations may result in some temporary inequality, that is eventually eliminated and the plans have been held not to be arbitrary.

On the other hand, the assessment of partial completions can be and necessarily must be completed in one year. The justification for not completing the assessments of partially constructed buildings for 1971 was not that such an assessment could not be done in one year but that it could not be done in the two months that were available after the directive was issued. This is a significant distinction. The result of the limited implementation of the directive was discrimination against those few taxpayers who were assessed as partial completions. This discrimination would not be cured by assessing all partial completions the next year. The class to which appellees belong was that of partially completed buildings as of January 1, 1971. Those partial completions which escaped valuation would never be taxed as partial completions but would be valued along with appellees' properties the following year as completed buildings. This discriminatory result violates the principles of uniformity of taxation and equal protection.

The judgment of the trial court ordering a refund of the taxes paid under protest is affirmed.

SCHROEDER, P. J., and EUBANK, J., concur.

## ON REHEARING

WREN, Judge.

Upon Motion for Rehearing, this Court feels compelled to issue this supplemental opinion. We reaffirm our prior opinion in this matter in its entirety except for that portion which states that the finding of discrimination rendered moot all other issues raised by appellants. The one issue that did not become moot is the question of classification of the property pursuant to A.R.S. § 42–136. Although our holding of discriminatory assessment resulted in non-taxability of the partially completed structures for the 1971 tax year, there was no question but that the underlying real property was nevertheless subject to taxation and the amount of that tax depends upon the classification of the property. See, A.R.S. § 42–227 B.

The classification dispute is whether the property is Class three or Class four property. The trial court ruled that Class four was the proper classification. A.R.S. § 42–136 defines the various classes and provides, inter alia:

"3. Class three:

All real and personal property devoted to any commercial or industrial use other than property included in classes one, two or four, including but not limited to land, the improvements thereto or any part of such land or improvements leased or rented for residential use.

"4. Class four:

(a) All real property and the improvements thereto, if any, used for agricultural purposes, and all other real property and the improvements thereto, if any, not included in classes one, two, three or five."

Appellants contend that even in a state of partial completion, appellees' property was "devoted to" commercial use and therefore was Class three property in the 1971 tax year. Appellees assert that property is not "devoted to" commercial use until it is capable of producing income.[1] We agree with appellants that the partially completed property was "devoted to" commercial use

---

1. We note that the legislature has now resolved this question by amending A.R.S. § 42–136 to provide:

"B. For the purposes of classification of property under this section, partially completed or vacant improvements shall be classified according to their intended use."

and should have been classified as Class three property.

In *Apache County v. Atchison, Topeka & Santa Fe Ry. Co.,* 106 Ariz. 356, 476 P.2d 657 (1970), our Supreme Court discussed classification and noted that the only restraint on the power of the legislature is that once property has been classified, the rate of tax must be uniform upon all property of the same class. Clearly the authority to classify appellees' properties as commercial even while partially complete was within the legislature's power. In this same decision, the Supreme Court discussed the purpose underlying classification statutes. That purpose is to shift the burden of taxes so that everyone contributes according to his ability to pay. Classification schemes should take into account the property's use, productivity, utility and general setting in the economy. *Apache County v. Atchison, Topeka & Santa Fe Ry. Co.,* supra.

We are of the opinion that under the plain wording of the statute, appellees' properties were devoted to commercial use at the time of their classification for the 1971 tax year. The developers of the properties had already invested millions of dollars in the planning and construction of these commercial buildings. Under the criteria for classification set forth above, only productivity is lacking. In terms of the properties' use, utility and setting in the economic structure, they were justifiably asked to bear a higher tax burden than Class four property. We believe the trial judge erred in finding they were not yet devoted to commercial use.

Judgment affirmed in part, reversed in part. Remanded for further proceedings not inconsistent with this opinion.

SCHROEDER, P. J., and EUBANK, J., concur.