## IN RE APPLICATION OF RAYMOND C. PLOETZ FOR REDUCTION OF TAXES v. COUNTY OF HENNEPIN.

223 N. W. 2d 761.

October 18, 1974—No. 44540.

*Raymond C. Ploetz*, pro se, for appellant.

*Gary Flakne*, County Attorney, and *David Culbert*, Assistant County Attorney, for respondent.

Heard before MacLaughlin, Yetka, and Otis, JJ., and considered and decided by the court en banc.

PER CURIAM.

In these proceedings, consolidated for trial, petitioner, Raymond C. Ploetz, sought a reduction of the real property taxes assessed against his property by Hennepin County for the assessment years 1970 and 1971. The issue is whether the taxes involved were unfairly or unequally assessed for those years. The trial court, sitting without a jury, denied relief and petitioner appeals from an order denying his motion for a new trial. We affirm.

The real estate involved is lakeshore property in the village of Minnetrista, which is occupied by petitioner as his residence. It is one of approximately 1,800 parcels in the taxing district of Minnetrista. In 1970, the Minnetrista local assessor undertook to reassess as much of the village as possible. The urban area of the village was assessed through an examination of individual properties, while in the rural area a 20-percent overall increase was imposed on land only, with no reassessment of existing improvements. At the time in question, the statute required the assessor to assess property every even-numbered year.[1] However, because of time and manpower limitations, the village has taken the position that it is not possible to assess all of the property in the village every assessment year. Therefore, the assessment is done on a subdivision basis so that if a subdivision is not assessed in one assessment year, its previous assessment values are carried over, and the properties in the subdivision are assessed in the next assessment year.[2]

In order to equalize the assessment of agricultural land, the

[1] Minn. St. 273.01 was amended effective January 1, 1973, to change the assessment year to every odd-numbered year. L. 1971, c. 564, § 5.

[2] While it is not an issue in this case, we held in Bethke v. County of Brown, 301 Minn. 380, 223 N. W. 2d 757 (1974), that separate taxing districts "may not constitutionally divide their districts into segments and place on the tax rolls revaluations of parcels located within selected segments prior to completion of the revaluation of all property located within the taxing district involved."

assessor utilized a schedule which graded land from wasteland to Grade A tillable. During the years 1970 and 1971, Grade A tillable land was valued by the assessor at $360 an acre. Herman Quaas, the local assessor for the years in question, testified that $360 was the market price for rural land in that area in 1970. He said that he knew of one Grade A tillable farm property that sold for $308 an acre in 1970. Petitioner claims that the fair market value of rural land was higher than the assessed value although he presented only one example, the purchase of land by the village for a village hall, to support his contention.

Petitioner does not claim that his property was assessed at a figure higher than its market value, but contends that his property was not assessed on an equal and uniform basis with other property located in the taxing district. To establish this claim, petitioner compares his property with the reassessed rural land and with two other urban properties located in Minnetrista. One of these properties was owned by Robert L. Fillmore, the mayor of Minnetrista during 1970, who also served as the chairman of the 1970 Board of Review. The other property was owned by a Minnetrista councilman, Walton Clevenger, who also was a member of the Board of Review. The Board of Review, composed of members of the village council, sits to review the assessment of property in the village and to assure that all taxable property has been properly placed upon the tax list and duly valued by the assessor. Minn. St. 274.01. The local assessor is an employee of the village, which is governed by the village council.

The testimony revealed that prior to the assessor's 1970 reassessment petitioner's property was assessed at a fair market value of $42,600 and Mayor Fillmore's property at $51,480. In 1970, Councilman Clevenger's property was assessed at either $29,640 or $35,640. In the 1970 reassessment, Mayor Fillmore's property was not reassessed in spite of the fact that all other properties in his subdivision were reassessed. Councilman Clevenger's property was not reassessed in 1970, but the evidence shows that other properties in that particular subdivision

also were not reassessed. In the 1970 reassessment, petitioner's property was revalued upwards from $42,600 to $69,330. The local assessor testified that he could not recall why the Fillmore property was not reassessed.

In response to petitioner's objection to the Board of Review that the Fillmore and Clevenger properties had been omitted from the reassessment, the local assessor made an assessment of those properties. While the records are apparently nonexistent, and the local assessor testified he could not recall the values placed on each property as a result of the assessment, petitioner testified that the assessments reported by the assessor to a meeting of the Board of Review were $89,400 for the Fillmore property and $46,308 for the Clevenger property. Later, as a result of adjustments by the Board of Review, the final fair market valuations were $59,160 for petitioner, $64,500 for Fillmore, and because of ambiguities in the record either $34,380 or $40,380 for Clevenger.

Petitioner testified that the Fillmore property was markedly superior to his own in design, materials, features, and location and that it included a separate rental unit. He testified that the Clevenger property was superior to his property in some respects and similar to it in others. The evidence showed that Mayor Fillmore's property sold in 1972 for $99,000.

The trial court found that there was insufficient evidence of discrimination against petitioner's property to establish that it had been unfairly or unequally assessed. Findings of the trial court must be affirmed on appeal unless clearly erroneous. Rule 52.01, Rules of Civil Procedure.

The burden of proof is on petitioner to show that his property has been unfairly and inequitably assessed. He must show that the inequitable assessment against his property resulted from systematic, arbitrary, or intentional undervaluation of some property as compared to his own. We said in In re Petition of Hamm v. State, 255 Minn. 64, 70, 95 N. W. 2d 649, 654 (1959):

"The right to uniformity and equality is the right to equal

treatment in the apportionment of the tax burden. Uniformity of taxation does not permit the systematic, arbitrary, or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property of the same class. Neither does uniformity permit the adoption of an arbitrary yardstick of valuation for all properties which ignores their differences in actual market value.

"It follows that discrimination in the imposition of the tax burden, resulting from systematic, arbitrary, or intentional undervaluation of some property as compared to the valuation of other property in the same class, violates the uniformity clause of Minn. Const. art. 9, § 1, and the equal-protection clause of U. S. Const. Amend. XIV, even though the property so discriminated against be not assessed higher than its fair market value adopted as a uniform basis in the making of assessments. Uniformity and equality in a constitutional sense does not require mathematical exactitude in the valuation of property for taxation. Absolute equality is impracticable of attainment and the taxpayer may not complain unless the inequality is substantial. Mere errors of judgment in estimating market value of property usually will not support a claim of discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity."

Our review of the rather incomplete record leads us to the conclusion that the trial court's finding is not clearly erroneous. While we do not believe that it was necessary to compare the subject property with a substantial number of other properties in order to prove assessment discrimination, we deem it advisable to base such a finding upon the few parcels about which testimony was offered in this case. Further, with regard to the rural property, we believe the evidence is insufficient to establish unfairness or discrimination in the assessor's valuation.

On the other hand, there is a clear inference from the record that the property of the village officials was very likely given preferential treatment and that petitioner's ire was more than

justified. The possibility of unfairness and inequality in tax assessments is obvious, and this court and all of the district courts in this state must always be vigilant to prevent any such injustice when appropriate legal action is taken. To that end, watchful citizen scrutiny is appropriate and necessary and is not to be discouraged. However, because of the actions of this petitioner adjustments have been made which lead us to believe, based upon the record, that any preferential treatment of these officials and consequent unfairness to other property owners have been eliminated. Therefore, based on all of the evidence, we affirm the judgment of the trial court.

Affirmed.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.