**BETHUNE ASSOCIATES,**
**Petitioner, Respondent,**

v.

**COUNTY OF HENNEPIN, Relator.**

**No. C2-84-1692.**

Supreme Court of Minnesota.

Feb. 15, 1985.

Thomas L. Johnson, Hennepin County Atty., Robert T. Rudy and Charles F. Sweetland, Asst. County Attys., Minneapolis, for relator.

Lapp, Lazar, Laurie & Smith, Benjamin J. Smith and Douglas J. Shiell, Minneapolis, for respondent.

## OPINION

YETKA, Justice.

In 1983, Bethune Associates (taxpayer) filed an objection to the 1982 property tax assessment on its 223-unit apartment building in Minneapolis. After some negotiation, Bethune and Hennepin County agreed that resolution of Bethune's claim would differ if the 1984 amendment to Minn.Stat. § 278.05, subd. 4 (1983) applied to a trial of Bethune's petition for reassessment. The tax court held that the amendment did not apply and Hennepin County appeals. We affirm.

The Minneapolis Assessor originally estimated the market value of Bethune's apartment building for the 1982 property tax assessment at $4,760,000. By stipulation, Bethune's claim of overassessment was resolved and the estimated market value of the building for taxes assessed in 1982 was lowered to $2,000,000, its fair market value in 1982. Despite this reduction, Bethune maintained that the estimated market value of its property for the 1982 tax assessment was still unjust because other properties in the same class were valued for tax purposes at substantially less than their full market value. Since Hennepin County disputed this contention, Bethune's claim of discriminatory assessment was submitted to the tax court for decision. The parties agreed that resolution of this claim would differ if the Act of April 25, 1984, ch. 502, art. 11, § 5, 1984 Minn.Laws 493, 605 ("1984 amendment") applied to the trial of Bethune's petition for reassessment. The tax court held that the 1984 amendment did not apply. We agree.

The 1984 amendment is the most recent in a series of amendments to subdivision 4 of Minn.Stat. § 278.05, a statute which governs various matters relating to the trial of a taxpayer's petition for property tax reassessment. The legislature added subdivision 4 to Minn.Stat. § 278.05 in 1980 to permit the use of the Minnesota Department of Revenue's assessment/sales ratio studies as evidence in all trials of petitions for reassessment. These assessment/sales ratio studies or "sales ratio studies," as they are commonly called, are prepared by the Department of Revenue for use in determining how state aid to local school districts and municipalities will be distributed.

Although Minn.Stat. § 273.11 (1984) provides, with some limited exceptions, that all property shall be valued for tax purposes at market value, most properties are actually valued at below market value due to a number of factors. *See* Note, *The Minnesota Supreme Court: 1980,* 65 Minn.L. Rev. 1063, 1091–92 (1981). The sales ratio studies prepared by the Department of Revenue measure the average percentage of market value at which properties within a taxing district are valued. Thus, these studies may provide help in proving that a property has been valued at a higher percentage of its market value than other properties in the same class within the taxing district. In fact, we held in *Short v. County of Hennepin,* 353 N.W.2d 525 (Minn.1984), that a taxpayer may use the department's sales ratio studies to establish a *prima facie,* though not an irrebuttable, case of property tax discrimination. *Id.* at 532.

On April 25, 1984, the legislature amended Minn.Stat. § 278.05, subd. 4 (1983) to read:

> Subd. 4. SALES RATIO STUDIES AS EVIDENCE. The sales ratio studies published by the department of revenue, or any part of the studies, or any copy of the studies or records accumulated to prepare the studies which is prepared by the commissioner of revenue for the equalization aid review committee for use in determining school aids shall be admissible in evidence as a public record without the laying of a foundation <u>if the sales prices used in the study are adjusted for the terms of the sale to reflect market value and are adjusted to reflect the difference in the date of sale compared to the assessment date.</u> Additional evidence relevant to the sales ratio study is also admissible. No sales ratio study received into evidence shall be conclusive or binding on the court and evidence of its reliability or unreliability may be introduced by any party includ-

ing, but not limited to, evidence of inadequate adjustment of sales prices for terms of financing, inadequate adjustment of sales prices to reflect the difference in the date of sale compared to the assessment date, and inadequate sample size.

No reduction in value on the grounds of discrimination shall be granted on the basis of a sales ratio study published by the department of revenue unless

(a) the sales prices are adjusted for the terms of the sale to reflect market value,

(b) the sales prices are adjusted to reflect the difference in the date of sale compared to the assessment date,

(c) there is an adequate sample size, and

(d) the median ratio of the class of property of the subject property in the same county, city, or town of the subject property is lower than the assessment ratio of the subject property by at least ten percent.

If the above criteria are met and a reduction in value on the grounds of discrimination is granted based upon the sales ratio study, the reduction shall reflect only the difference between the assessment/sales ratio of the subject property and 110 percent of the median ratio of the class of property of the subject property.

Act of April 25, 1984, ch. 502, art. 11, § 5 1984 Minn.Laws 493, 605 (1984 additions underlined). The 1984 amendment is "effective the day following final enactment," April 26, 1984. *Id.* § 6.

Bethune and Hennepin County agree that if the 1984 amendment applies to the trial of Bethune's petition for reassessment, the Revenue Department's 1982 study should not be admitted because the sales prices used in that study are not adjusted to reflect the terms or date of the sales. The parties, however, dispute the

applicability of the 1984 amendment. Hennepin County contends that it applies; Bethune argues that it does not.

In their stipulation, the parties agreed that, regardless of when the 1984 amendment applies, the 1982 sales ratio study prepared by the Minneapolis Assessor's office should be admitted. Although Hennepin County contends that the Minneapolis study is based on the sales figures used by the Department of Revenue and that the Minneapolis Assessor's office, in its study, properly adjusted these figures to reflect the terms and dates of the sales, Bethune maintains that Minneapolis' 1982 sales ratio study is biased and inaccurate. Nevertheless, Hennepin County and Bethune agreed that if the 1984 amendment applied and precluded the tax court from considering the Department of Revenue's 1982 study, but not the Minneapolis study, Bethune would not be entitled to a further reduction in the estimated market value of its apartment for 1982 because of discrimination in the assessment process. They also agreed that if the 1984 amendment did not apply, both the Minneapolis and the Department of Revenue studies for 1982 should be admitted and the estimated market value of Bethune's apartment for the 1982 assessment would be reduced to 88% of its $2,000,000 market value.[1]

The sole issue presented for our decision is whether the 1984 amendment to Minn. Stat. § 278.05, subd. 4 (1983) applies to all trials of Chapter 278 real estate tax petitions commencing on or after April 26, 1984.

Judge Earl B. Gustafson of the tax court concluded that the 1984 amendment to Minn.Stat. § 278.05, subd. 4 "should only apply prospectively to causes of action that arise after the Department of Revenue has the data available that will allow it to make these adjustments." We agree with the reasoning advanced by Judge Gustafson in the thoughtful memorandum which accompanied his decision:

---

1. This 88% figure was the ratio used by the tax court in two similar reassessment proceedings in which both the Minneapolis and the Revenue Department studies for 1982 were admitted. *See Klodt v. Hennepin County,* Nos. TC–1211,

TC–1775, TC–2371 (Minn.Tax Ct. Jan. 12, 1983), and *G & T Investment Co. v. Hennepin County,* Nos. TC–1181, TC–1658, TC–2400 (Minn.Tax Ct. Jan. 12, 1984).

"A taxpayer's constitutional right to receive equal treatment in property taxation has been affirmed in federal and state case law.  * * *

* * * * * *

"Possessing a theoretical legal right and presenting sufficient evidence in court to receive relief based upon this right are two entirely different matters.  How does a taxpayer prove 'unequal taxation'?  There must, under [Minnesota case law], be a showing that other properties in the same taxing district are systematically being valued at a substantially lower percentage of full market value than the subject property.  Showing that two or three other properties in the same municipality are undervalued is insufficient.  *Ploetz v. County of Hennepin*, 301 Minn. 410, 223 N.W.2d 761 (1974).  It has been held that proof that ten other homesteads in the City of Minneapolis are undervalued does not establish a pattern of unequal treatment.  *McCannel v. County of Hennepin*, 301 N.W.2d 910 (Minn.1980).  Likewise, a private sales ratio study that analyzed all commercial sales in St. Louis Park during a three-year period failed to pass judicial scrutiny.  *United National Corp. v. County of Hennepin*, 299 N.W.2d 73 (Minn.1980).  Realistically, a discrimination case can best be established by introducing Department of Revenue assessment/sales ratio studies.

* * * * * *

"After 1980 the tax court started making regular use of sales ratio studies prepared by the Department of Revenue specially for the court.  These studies are based on the identical data used by the Department of Revenue in its studies for equalizing educational aids although somewhat different time periods are selected.

"Where there is no statutory prohibition preventing their use, these Department studies are clearly admissible as relevant evidence.  Rule 401, Minn. Rules of Evidence.  In addition, governmental studies such as these are specifically exempted from the exclusionary hearsay rule by Rule 803(8), Minn.Rules of Evidence.  In other words, no special statutory authorization allowing their use would be necessary.  Respondent Hennepin County has always objected to the introduction of these studies claiming they are unreliable without further adjustment to 'cash equivalency' and an additional adjustment for time.  We have held that this type of objection may go to the weight of the evidence but not to its admissibility.

* * * * * *

"In summary, therefore, the Department of Revenue sales ratio studies unadjusted for terms and time constitute relevant credible evidence.  They are extremely helpful to the court in resolving the fact issue where there is a claim of unequal treatment.  They are prepared by a neutral third party, the Department of Revenue, by public employees in the course of their official duties.  There appears to be no public purpose served in excluding this relevant reliable evidence that will assist the court in reaching a correct decision.  Accurate sales ratio studies are neutral—they favor neither party.  In a given case they can just as easily prove equal treatment as they can prove unequal treatment.

"Even though the Department's sales ratio studies are reliable and accurate, they, of course, are not infallible.  Sometimes the number of sales in a taxing district, for instance, might be insufficient to yield a statistically significant sample.  In recent years with high interest rates, the phenomenon of 'creative financing' has arisen.  The seller typically finances the purchase by selling on a contract for deed with a low down payment and an interest rate below the conventional bank mortgage rate.  This requires some downward adjustment in the sale price to arrive at a 'cash equivalent' price.  The recorded data available to the Department of Revenue does not presently contain information about terms and interest rates so no such adjustments have been made in its studies.  Recognizing that lower cash equivalent prices tend to raise the sales ratios, the court has, on its own, taken this into consideration in making its ultimate factual determinations.

"Now we come to the 1984 amendment to Minn.Stat. § 278.05, Subd. 4 (1984 Minn.

Sess.Laws, Chapter 502, Art. 11, Sec. 5) which prevents the court from considering the Department's sales ratio studies unless they are 'adjusted for the terms of the sale to reflect market value'. This, of course, lays down an impossible condition because there is no data presently available that would allow the Department to adjust for 'the terms of the sale to reflect market value'.

"However, the Department of Revenue will soon be in a position to consider financing terms in preparing its studies. By 1983 Minn.Sess. Laws, Chapt. 342, Art. 2, Sec. 4, amending Minn.Stat. § 272.115, Subd. 1, relating to certificates of value, the legislature added the following language:

The certificate shall include financing terms and conditions of the sale which are necessary to determine the actual present value of the sale for purposes of the sales ratio study. The commissioner of revenue shall promulgate administrative rules specifying the financing terms and conditions which must be included on the certificate.

"Pursuant to the administrative rules promulgated under this amendment, financing terms will be required to be included on certificates of value commencing October 1, 1984. This should allow the Department to adjust sale prices for terms sometime in 1985 or later.

"With this background, we return to the question of how the effective date of 1984 Minn.Sess.Laws, Chapter 502, Art. 11, Sec. 5, the '1984 amendment' to Minn.Stat. § 278.05, Subd. 4, should be construed.

"After saying the Department's sales ratio studies cannot be considered unless the 'sales prices are adjusted for the terms of the sale to reflect market value', the amendment reads this section is 'effective the day following final enactment' which was April 26, 1984.

"The only logical and reasonable construction of this language is to apply it to sales ratio studies the Department will prepare whenever it has the necessary data. This clearly was the legislative intent. Knowing that adjustments for terms could not be made from non-existent data, 1983

Minn.Sess.Laws, Chapt. 342, Art. 2, Sec. 4 was passed by the legislature requiring this new information to be included on future certificates of value. The '1984 amendment' followed.

"If the administrative rules had been adopted immediately, the statutes would have meshed because financing data for 1983 and 1984 studies would now be available. Because these rules have not as yet gone into effect, no 1983 data and little 1984 data can be used. The first study using the adjustments for financing terms might have to await 1985 sales data.

"In attempting to ascertain legislative intent, we are aided by several presumptions:

1. No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature. Minn.Stat. § 645.21

2. The legislature does not intend a result that is absurd, *impossible of execution,* or unreasonable.
   Minn.Stat. § 645.17 (Emphasis added)

3. The legislature does not intend to violate the constitution of the United States or of this state.
   Minn.Stat. § 645.17

"To adopt respondent's construction would result in grossly unequal treatment among and between taxpayers similarly situated. A number of petitions in which these sales ratio studies were properly introduced and considered have already been decided. A number of similar petitions from various counties are presently awaiting trial. The practical effect of construing this 1984 amendment as a prohibition against using all existing Department sales ratio studies in trials occurring after April 26, 1984, would be to eliminate most, if not all, pending claims alleging unequal treatment.

"Based upon the facts peculiar to this 1984 amendment to Minn.Stat. § 278.05, Subd. 4, we conclude that the legislature did not intend it to have any retroactive application. See *Ekstrom v. Harmon,* 256 Minn. 166, 98 N.W.2d 241 (1959).

"Our ruling is consistent with Minn.Stat. § 645.35 (1982) that prevents rights ac-

crued or civil actions, once commenced, from being eliminated by repeal of the law that originally created that right or cause of action.

"Minn.Stat. § 645.35 (1982) reads as follows:

The repeal of any law shall not affect any right accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the law repealed. Any civil suit, action, or proceeding pending to enforce any right under the authority of the law repealed shall and may be proceeded with and concluded under the laws in existence when the suit, action, or proceeding was instituted, notwithstanding the repeal of such laws; or the same may be proceeded with and concluded under the provisions of the new law, if any, enacted.

"Although 1984 Minn.Sess.Laws, Chapt. 502, Art. 11, Sec. 5 did not specifically repeal the existing law authorizing the use of the Department's sales ratio studies, it had the same effect. Under both Minn. Stat. § 645.35 (1982) and Minn.Stat. § 645.-21 (1982), the legislature has said that laws that eliminate existing rights or that adversely affect an existing cause of action should not be given retroactive effect.

"Sales ratio studies prepared by the Department of Revenue will not be excluded from evidence until such time as financing data becomes available through recorded certificates of value. Thereafter, these studies will be excluded if the Department fails to make the required adjustments to sale prices."

At oral argument, Hennepin County contended that application of the 1984 amendment to all Chapter 278 trials commencing after April 25, 1984, would not prevent taxpayers from proving claims of unequal assessment. Although Hennepin County's contention is theoretically correct, as a practical matter, the taxpayer's ability to demonstrate discrimination in the assessment process would be severely curtailed if the Department of Revenue's sales ratio studies could not be used. Even if we accept Hennepin County's suggestion that a Minneapolis taxpayer can rely on Minne-

apolis' sales ratio studies as evidence to prove a claim of unequal treatment, this provides little solace to the taxpayer whose property is located in a taxing district that has not prepared its own sales ratio study. Many districts might not have the financial resources to prepare their own studies and most have not prepared studies for past assessment years. In enacting the 1984 amendment to Minn.Stat. § 278.05, subd. 4 (1983), we do not believe the legislature intended to treat similarly situated taxpayers differently or to prejudice a taxpayer's ability to prove a claim of discriminatory assessment. Therefore, we hold that the 1984 amendment to Minn.Stat. § 278.05, subd. 4 does not preclude the evidentiary use of unadjusted Department of Revenue sales ratio studies for those assessment years for which the Department lacks the data needed to adjust its studies.

The tax court is affirmed in all respects.