MINNEGASCO, INC.,
Petitioner, Respondent,

v.

COUNTY OF CARVER, County of
Dakota, County of Scott,
Appellants.

No. C1–89–679.

Supreme Court of Minnesota.

Nov. 17, 1989.
Rehearing Denied Jan. 16, 1990.

Michael A. Fahey, Carver County Atty., Jean A. Shively, Asst. County Atty., Chaska, James C. Backstrom, Dakota County Atty., Jay R. Stassen, Asst. Dakota County Atty., Hastings, James A. Terwedo, Scott County Atty., Brian A. Nasi, Asst. County Atty., Shakopee, for appellants.

Harold H. Sheff, Michelle J. Ulrich, Olson, Gun & Seran, Ltd., Minneapolis, for petitioner, respondent.

SIMONETT, Justice.

These three cases (consolidated for trial) present a question on the classification of personal property of public utility companies for taxation purposes.

Petitioner Minnegasco, Inc., has filed petitions for review of the assessment of its property in Carver, Dakota, and Scott Counties for the years 1985 and 1986, claiming that within the commercial-industrial class to which its property is assigned, its personal property was unequally assessed.

The legislature by statute classifies real and personal property subject to ad valorem taxes. Minn.Stat. § 273.13, subd. 1 (1986). For the 1985 assessment, Minnegasco's property was included in Class 4; that class included commercial-industrial real and personal property, plus any other property not specifically included in another particular class. *See* Minn.Stat. § 273.13, subd. 9 (1984). For the 1986 assessment, the property classifications were restructured, and Minnegasco's property was included in Class 3a, covering only commercial-industrial property. *See* Minn

Stat. § 273.13, subd. 24 (1986).[1]

Much of the property of Minnegasco, primarily its distribution system, is deemed to be "personal property" subject to ad valorem taxation. Minn.Stat. § 273.33, subd. 2 (1988). Though some of the distribution facilities and structures are affixed to real estate, they nevertheless, for general property tax purposes, are called personal property.[2]

The three counties in this case assessed Minnegasco's "personal property" at 100 percent of market value. Other industrial and commercial real property included in Class 4 and Class 3a, was apparently assessed at less than full market value. The Assessment–Sales Ratio Studies prepared and published by the Department of Revenue indicate that in some counties commercial and industrial real property was valued at less than 90 percent of market value.[3] In the trial of this case, Minnegasco proposes to rely on these sales ratio studies to establish that its "personal property" received unequal treatment.

To counter Minnegasco's claim, the Counties made a pretrial motion for summary judgment, seeking an order that, as a matter of law, the commercial-industrial assessment-sales ratio does not apply to Minnegasco's "personal property." The Tax Court denied the motion, in effect ruling that the sales ratio studies are relevant to show a lack of uniformity in assessing property in Classes 4 and 3a. Deeming the issue important and doubtful, the Tax Court subsequently amended its order denying summary judgment to certify to this court the following question as posed by the Counties:

> [W]hether, as a matter of law, the commercial-industrial assessment/sales ratio that may be applied to other (real) property in Class 4 and Class 3a may not be applied to the petitioner's (personal) property in the same two classes * * *.

While Minnegasco questions the timeliness of the Counties' appeal, we think a better question (not raised by the parties) is whether the order is appealable. The Counties' motion only asked, in effect, for a pretrial ruling on the admissibility of certain evidence. Arguably, this is not a proper subject for a summary judgment motion which is concerned with the merits of claims, counterclaims, and cross-claims. Minn.R.Civ.P. 56. The Tax Court, however, in its memorandum accurately phrased the issue as:

> [W]hether petitioner's *"personal"* property should be considered as part of the "same class" for equalization with other commercial-industrial *"real"* property in the same statutory classification.

We think this formulation of the question properly states the question to be answered, and, as so stated, presents a claim amenable to resolution by a summary judg-

1. Section 273.13 was restructured in the 1985 legislative session to reduce the number of classifications. Commercial-industrial property, formerly in Class 4, was placed in Class 3a, effective for the 1986 assessment. Act of June 28, 1985, ch. 14, art. 4, §§ 49, 99, 1985 1st Spec.Sess.Minn.Laws 2426–27, 2459–60, codified at Minn.Stat. § 273.13, subd. 24 (1986). This section reads in part: *"Class 3.* (a) Commercial and industrial property is Class 3a. It is assessed at 28 percent of the first $60,000 of market value and 43 percent for the market value over $60,000."

2. Thus the Department of Revenue regulations provide:
   "Operating property" means any property owned or leased, except land that is directly associated with the generation, tr nsmission, or distribution of electricity, natu al gas, gasoline, petroleum products, or crude oil. Examples of operating property include, but are not limited to, substations, transmission and distribution lines, generating plants, and pipelines. Land, garages, warehouses, office buildings, pole yards, radio communication towers, and parking lots are examples of non-operating property.
   Minn.R. 8100.0100, subp. 13 (1985).

3. The assessment-sales ratio compares the sales prices of recently sold properties with the market value given these properties for tax purposes. The ratio measures how close to market value assessors value property. Assessment-sales ratio studies prepared by the Commissioner can establish a rebuttable prima facie case of unequal assessment. *Bethune Associates v. County of Hennepin,* 362 N.W.2d 323, 324 (Minn.1985); *In re Objection to Real Property Taxes,* 353 N.W.2d 525, 531 n. 4 (Minn.1984).

**880**

ment motion.[4]

## Discussion

■ The Minnesota Constitution, art. X, § 1 ("Taxes shall be uniform upon the same class of subjects * * * "), as well as the equal protection clause of the Federal Constitution's 14th amendment, require uniformity and equality in taxation. The uniformity and equal protection clauses do not permit systematic, arbitrary, or intentional valuation of some property at a substantially higher valuation than other property in the same class. *See, e.g., In re Objection to Real Property Taxes,* 353 N.W.2d 525, 529 (Minn.1984); *United National Corp. v. County of Hennepin,* 299 N.W.2d 73, 75 (Minn.1980); *Hamm v. State,* 255 Minn. 64, 70, 95 N.W.2d 649, 654–55 (1959). Where a deviation results from assessors applying different ratios to market value of property in the same class, the resulting tax discriminates against the individual taxed at the higher rate. *Dulton Realty, Inc. v. State,* 270 Minn. 1, 16, 132 N.W.2d 394, 405 (1964).

■ Minnegasco's position is simply and logically put. The legislature has chosen to put the "personal" property of utility companies in the same class as other commercial and industrial real property. It need not have done so, but it did. Having done so, all property within the class, here Class 4 (for 1985) and Class 3a (for 1986), must be treated equally so that all are taxed at approximately the same level of assessment. The Tax Court agreed with this argument, pointing out that the statutory scheme of classification is unambiguous and to treat the utility's "personal property" as somehow in a separate class, to be taxed at 100 percent of market value,

would be to indulge in impermissible judicial legislation.

If we look solely at § 273.13, the logic of Minnegasco's argument seems impeccable. It seems to us, however, the classifications described in Classes 4 and 3a must be viewed within a broader statutory context. Within this broader perspective, there is, we think, ambiguity in the classification scheme which warrants judicial inquiry into legislative intent.

It is highly significant, we think, that the legislature's plan of taxation treats property owned by public utilities as a unique case. As we have noted, much of a public utility's real property is treated as if it were personal property. And while the legislation has eliminated generally the personal property tax, it has retained that tax for public utilities. This has a number of important consequences.

First of all, the statutory procedure for challenging personal property tax assessments does not provide for the use of sales ratio studies as evidence. *See* Minn.Stat. § 277.011 (1988). Only for challenges relating to real property taxes has the legislature expressly provided for use of sales ratios. Minn.Stat. § 278.05, subd. 4 (1988). Presumably the legislature felt that public utility "personal property" does not lend itself to meaningful sales ratio studies. Indeed, personal property values are not included in the certificate of real estate values used to compute sales ratio studies.

Secondly, commercial and industrial real property is assessed by the local assessor. The local assessor also assesses the land and "nonoperating" property of public utilities. *See* footnote 2; also Minn.R. 8100.-0500, subp. 2 (1985). But for "personal property" of public utilities, Minn.Stat. § 273.33, subd. 2 (1988), provides:

**4.** If the trial court's order were to be characterized as an interlocutory ruling on admissibility of evidence, appellate review, if obtainable, would probably have to be by an extraordinary writ. Compare criminal practice, Minn.R. Crim.P. 28.03 (an important or doubtful "question of law" may be certified to the court of appeals).

We might add there is no merit to Minnegasco's claim that the appeal is untimely. The Counties' motion for summary judgment was

denied by order dated March 14, 1989. This was nonappealable. But the Tax Court's amended order of September 9, 1989, certifying the question as important and doubtful was appealable, *see* Minn.R.Civ.App.P. 103.03(h), and the Counties' appeal from this second order was proper and timely. *See Servin v. Servin,* 345 N.W.2d 754, 757 (Minn.1984) (citing *E.C.I. Corp. v. G.G.C. Co.,* 306 Minn. 433, 435, 237 N.W.2d 627, 629 (1976)).

The personal property, consisting of the pipeline system of mains, pipes, and equipment attached thereto, of pipeline companies and others engaged in the operations or business of transporting natural gas * * * by pipelines, shall be listed with and assessed by the commissioner of revenue. * * * [T]he commissioner shall certify to the auditor of each county, the amount of such personal property assessment against each company in each district in which such property is located.

In other words, unlike other property which is assessed by the local assessor, the "personal property" of a public utility is assessed by the Commissioner of Revenue under highly complex rules promulgated by the Department of Revenue. Minn.R. ch. 8100 (1985). As explained in Rule 8100.-0300, subp. 1, "Because of the unique character of public utility companies, such as being subject to stringent government regulations over operations and earnings, the traditional approaches to valuation estimates of property * * * must be modified when utility property is valued."

The Commissioner values the utility company's entire system in accordance with a complicated formula, allocates the valuation to the states in which the utility operates, and then apportions Minnesota's share to the local taxing districts. Minn.R. 8100.0200 (1985). Under Minnegasco's theory, the county assessor would then have to equalize the "personal property" assessment apportioned to that taxing district with the assessments of the other commercial and industrial real property in the class. While this may be possible, it adds another step to the local assessment process, a step seemingly not contemplated by the statutory and regulatory scheme. Compare, too, the statewide equalization responsibilities imposed on the Commissioner by Minn.Stat. § 370.12 (1988).

The position taken by Minnegasco and the Tax Court has merit. Nevertheless, we are not persuaded that inclusion of a public utility's "personal property" in Class 4 and Class 3a is some kind of straightjacket that precludes recognition of the "unique char-

acter" of that property. When § 273.13 is read in conjunction with § 273.33 and the Department of Revenue regulations promulgated pursuant thereto, we believe that the legislature has designated a utility's personal property as a class within a class, which may be assessed differently than other commercial and industrial real property in the general commercial-industrial class. In other instances, we note, the legislature has provided for different assessment treatment of properties within the same statutory classification, as, for example, the allowance of a more beneficial market value for those properties within a class that utilize an alternative energy source. See Minn.Stat. § 273.11, subd. 6 (1988).

When, as here, there is ambiguity in the contours of the statutory classification, it is to be presumed that the legislature did not intend an interpretation that would be unconstitutional. Minn.Stat. § 645.17(3) (1988). Our interpretation of the statutes avoids violation of the uniformity and equal protection clauses. We stress, however, as we did at the beginning of this discussion, that the unique character of public utility property makes this a special case.

One final comment. A few days before this case was argued before us, the legislature in special session passed a comprehensive property tax relief and reform bill. H.F. 1, 76th Minn.Leg. 1st Spec.Sess.1989. This bill includes an amendment of § 270.12 to provide that for equalization purposes public utility personal property shall be treated as a separate class "notwithstanding the fact that its tax capacity percentage is the same as commercial-industrial property." H.F. 1, art. 3, § 1, 76th Minn.Leg. 1st Spec.Sess.1989. The amendment states it is "intended to confirm and clarify the original intent of the legislature." H.F. 1, art. 3, § 35, 76th Minn.Leg. 1st Spec.Sess.1989. We agree with Minnegasco that we should give this amendment no retroactive significance. It is problematical whether the 1989 legislature knew the mind of the 1981 legislature. See Herrly v. Muzik, 374 N.W.2d 275, 279 (Minn.1985) (caution must be exercised in using subsequent legislative history to di-

vine earlier legislative intent). Here, too, it appears the amendment was proposed by the Counties to this lawsuit seeking to bolster their theory of the case.

The question presented is answered no; petitioner's property, although subject to the taxing percentages of classes 4 and 3a, is not a part of the "same class" for equalization purposes.