**James S. HARRIS, III, Respondent,**

v.

**COUNTY OF HENNEPIN, Relator.**

**No. A03–1108.**

Supreme Court of Minnesota.

May 27, 2004.

Amy Klobuchar, Hennepin County Attorney, Robert A. Burck, Assistant County Attorney, Minneapolis, MN, for Relator.

Thomas R. Wilhelmy, Laurie J. Miller, Joseph G. Springer, Fredrickson & Byron, P.A., Minneapolis, MN, for Respondent.

Mike Hatch, Attorney General, James W. Neher, Asst. Attorney General, St. Paul, MN, for amicus Commissioner of Revenue.

## OPINION

MEYER, Justice.

This case presents the question of whether property tax relief under Minnesota's equalization relief statute should be calculated based on a property's actual market value or its limited market value. The Minnesota Tax Court concluded that equalization relief is based on a property's limited market value. We reverse.

█ The legislature has provided various mechanisms to alleviate the property tax burdens on certain classes of property. One form of relief is designed to alleviate the impact of unequal assessment among similarly situated, comparable properties, otherwise known as equalization relief. Under Minn.Stat. § 278.05, subd. 4 (2002), even where a property has not been valued in excess of its actual market value, the property owner can obtain relief if the property is valued unequally in comparison with other property in the taxing district.[1]

Another kind of property tax relief is designed to alleviate the impact of rapidly increasing market values. Under Minn.

Stat. § 273.11, subd. 1a (2000), known as the limited market value statute, a cap is placed on the rate at which a taxpayer's property tax assessment can increase from one year to the next.[2]

James S. Harris, III, taxpayer-respondent, owns a residence in the town of Minnetrista with an estimated market value in 2001 of $4,788,000.[3] The parties agree that Harris is entitled to equalization relief under Minn.Stat. § 278.05, subd. 4.[4] The parties also agree that Harris is entitled to limited market value relief under Minn.Stat. § 273.11, subd. 1a.

The issue presented requires this court to determine in what order the two types of property tax relief are to be applied. Harris claims that he should be allowed to take his equalization reduction from the limited market value of his property in the amount of $4,479,900.[5] This interpretation of the law would yield an assessed value of $4,229,100. Hennepin County (the county) and the Department of Revenue disagree, arguing that Harris's equalization reduction should first be taken from the actual market value of his property and that the limited market value relief should then be applied. This interpretation of the law

---

1. The practice of assessing some properties in a taxing district at higher percentages of actual market value relative to other properties in that taxing district is referred to as "unequal assessment." *Weyerhaeuser Co. v. County of Ramsey*, 461 N.W.2d 922, 924 (Minn.1990).

2. The only tax year at issue in this case is the year 2001; therefore, we refer to the 2000 statute.

3. The estimated market value is the value established by the assessor before any adjustments are made to the value of the property. *See* Minn.Stat. § 127A.48, subd. 5 (2002). This value reflects the assessor's estimation of the property's actual market value, the price at which it would sell on the open market. *See* Minnesota Tax Court, *Presenting Property*

*Tax Appeals to the Minnesota Tax Court, available at http://www.taxcourt.state.mn.us/ProSePPY.htm* (last modified Sept. 24, 2003).

4. Pursuant to Minn.Stat. § 278.04 (2002), the Department of Revenue conducted a nine-month "assessment/sales ratio study" to determine whether property in various taxing districts would qualify for equalization relief. According to a formula set forth in section 278.05, Harris was entitled to reduce the taxable value of his property by 5.6 percent.

5. The parties stipulated before the tax court that the limited market value provisions of Minn.Stat. § 273.11, subd. 1a, applied to the subject property and pursuant to the statute the assessor established a limited market value of $4,479,900 for the property.

would yield an assessed value of $4,529,400. The county contends that the limited market value would cap the assessed value.

The dispute between Harris and the county was submitted to the tax court on stipulated facts. The court granted summary judgment for Harris, concluding that applying equalization to the limited market value of property was the only way to give effect to both the equalization relief statute and the limited market value statute. The county appealed to this court, alleging that the tax court erred by granting Harris an equalization reduction from limited market value rather than actual market value.

■■■■ This is a case of first impression. We have not previously determined the proper interplay between the limited market value and equalization relief statutes. We review this summary judgment ruling on stipulated facts to determine whether the tax court erred in its application of the law. *Brookfield Trade Center, Inc. v. County of Ramsey*, 609 N.W.2d 868, 873–74 (Minn.2000). Statutory construction is an issue of law that we review de novo. *Astleford Equip. Co. v. Navistar Int'l Transp. Corp.*, 632 N.W.2d 182, 188 (2001). The object of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2002). Courts must give effect to the plain meaning of statutory text when it is clear and unambiguous. *Green Giant Co. v. Comm'r of Revenue*, 534 N.W.2d 710, 712 (Minn.1995). "A statute is ambiguous if it is reasonably susceptible to more than one interpretation." *Current Tech. Concepts, Inc. v. Irie Enter., Inc.*, 530 N.W.2d 539, 543 (Minn.1995).

The equalization relief statute, Minn. Stat. § 278.05, subd. 4, provides that in the trial of an equalization case, "sales ratio studies" published by the Department of Revenue "shall be admissible in evidence as a public record." "Sales ratio studies" are then referenced in Minn.Stat. § 127A.48 (2002 & Supp.2003), wherein the methodology for conducting the studies by the Department of Revenue is set forth in some detail. Reference to "sales ratio studies" is also found in Minn.Stat. § 273.11, subd. 1a, as follows:

> For purposes of the assessment/sales ratio study conducted under section 127A.48, and the computation of state aids paid under chapters 122A, 123A, 123B, 124D, 125A, 126C, 127A, and 477A, market values and net tax capacities determined under this subdivision and subdivision 16, shall be used.

Harris argues that the plain language of section 273.11, subdivision 1a, states that limited market values are to be used in an equalization proceeding. Harris reads the phrase "and the computation of state aids" as a conjunction, indicating the legislature's intent to employ limited market values in both assessment/sales ratio studies *and* state aid calculations. We believe that an equally plausible interpretation of the statute is that the legislature intended limited market values to be used "[f]or purposes of the assessment/sales ratio study" *as it relates to* the computation of state aids. *See id.* This interpretation acknowledges that there is more than one purpose for the study and that limited market values should only be used for one of those purposes, the calculation of state aids. Furthermore, the maxim *expressio unius est exclusio alterius*, the expression of one thing indicates the exclusion of another, supports the proposition that the absence of section 278.05 equalization proceedings in the list of enumerated chapters in section 273.11 indicates that the legislature did not intend for limited market values calculated under section 273.11 to apply to equalization relief. Minnesota Statutes § 273.11, subdivision 1a, does not

clearly and unambiguously lead us to conclude that limited market values are the basis for equalization proceedings.

■ We look to other sections of the law and our canons of statutory construction to determine the intent of the legislature. We may examine, among other considerations, the "occasion and necessity for the law" and "the circumstances under which it was enacted." Minn.Stat. § 645.16 (2002). We may also look to the state of the law before a statute was enacted. *Id.* In doing so, we will attempt to read statutes in a way that gives effect to all their provisions. *Id.* Statutes should be read as a whole with other statutes that address the same subject. *See State v. Chambers,* 589 N.W.2d 466, 480 (Minn. 1999).

It is helpful to examine equalization relief as it existed before the passage of Minn.Stat. § 278.05 in order to understand the occasion and necessity for the passage of the statute. Property tax assessors in Minnesota have historically "assess[ed] property systematically and uniformly at a percentage of its true value." *Renneke v. County of Brown,* 255 Minn. 244, 248, 97 N.W.2d 377, 380 (1959). Therefore, we have recognized that "discrimination in the imposition of the tax burden" violates the uniformity clause of the Minnesota Constitution and the Equal Protection Clause of the federal constitution. *Hamm v. State,* 255 Minn. 64, 70, 95 N.W.2d 649, 654–55 (1959). To remedy this unequal assessment, the courts of this state allowed taxpayers to receive relief if they could demonstrate that their property was assessed at a higher rate than other similarly situated properties. *See* Minn.Stat. § 271.01 (2002); *Renneke,* 255 Minn. at 248, 97 N.W.2d at 380. Sustaining such a claim necessarily requires that a taxpayer compare the assessed value of his property with that of property in the same class. *United Nat'l Corp. v. County of Hennepin,* 299 N.W.2d, 73, 76 (Minn.1980); *Renneke,* 255 Minn. at 248, 97 N.W.2d at 380.

In 1980, the legislature enacted Minn. Stat. § 278.05, subd. 4, to simplify the procedure for taxpayers to make out claims for equalization relief. *See* Act of Apr. 3, 1980, ch. 443, § 3, 1980 Minn. Laws 270, 272. Section 278.05, subdivision 4, states that the Department of Revenue's assessment/sales ratio study shall be "prima facie evidence of the level of assessment" in a given taxing district. The legislature incorporated the assessment/sales ratio study conducted under Minn.Stat. § 127A.48 (2002 & Supp.2003),[6] which was

---

6. Minnesota Statutes § 127A.48, subdivision 1 (Supp.2003), located in the education code, instructs the Department of Revenue to prepare an assessment/sales ratio study to "determine an aggregate equalized net tax capacity for the various classes of taxable property in each [school] district." The statute requires the department to complete the study using a "methodology consistent with the most recent Standard on Assessment Ratio Studies published by the assessment standards committee of the International Association of Assessing Officers" ("IAAO Standards"). Minn.Stat. § 127A.48, subd. 2 (2002). The statute further states that the Commissioner of Revenue "shall supplement this general methodology with specific procedures necessary for execution of the study in accordance with other Minnesota laws impacting the assessment/sales ratio study." *Id.*

The IAAO Standards refer to both "direct" and "indirect" equalization. IAAO Standards § 2.3.2 (1999). The IAAO makes clear, however, that constrained market values, such as limited market values in Minnesota, are appropriate only for indirect equalization, which estimates the aggregate tax base in various school districts or localities and, therefore, must account for statutory constraints on those tax bases. IAAO Standards §§ 2.3.2.2; 6.5.7. Similarly, the Department of Revenue refers to two distinct types of sales ratio studies that mirror the IAAO distinctions. The first, intended for use in equalization, matches sale prices against the

originally used to determine levels of state aids for local school districts, to provide a yardstick by which to measure claims for equalization relief. *See* Minn.Stat. § 278.05, subd. 4; *see also* Minn. Dep't of Revenue, 2003 Sales Ratio Study Criteria 2. Accordingly, Minn.Stat. § 278.05, subd. 4, announced the methodology for making out claims for equalization relief, but did not alter the essential nature of the taxpayer's remedy for unequal assessment.

In light of the purposes for statutory equalization and its constitutional underpinnings, we conclude that the legislature intended for equalization relief to be based on actual market value rather than limited market value. Since *Hamm* and *Renneke,* Minnesota courts have recognized a constitutional right for taxpayers to be assessed at a percentage of fair market value that is similar to other taxpayers in the same taxing district. *See Ploetz v. County of Hennepin,* 301 Minn. 410, 413–14, 223 N.W.2d 761, 763–64 (1974); *Dulton Realty, Inc. v. State,* 270 Minn. 1, 15, 132 N.W.2d 394, 404 (1964). The remedy necessarily required the aggrieved taxpayer to compute the ratio of the assessed value of his or her property to its actual value and compare similar ratios of other properties in his or her taxing district. *See United Nat'l,* 299 N.W.2d at 76. In enacting Minn.Stat. § 278.05, subd. 4, the legislature allowed the admission of sales ratio studies as evidence of levels of assessment, thereby establishing a uniform method for obtaining equalization relief. Nothing in the text of Minn.Stat. § 278.05, subd. 4,

purports to alter the purpose of equalization relief, to ensure that property is assessed at a uniform percentage of fair market value.

Furthermore, applying equalization relief to the fair market value of property is the only way to give effect to both Minn. Stat. § 278.05, subd. 4, and Minn.Stat. § 273.11, subd. 1a. Direct equalization is intended to guarantee that localities assess property at a uniform percentage of its true value.[7] *See Renneke,* 255 Minn. at 248, 97 N.W.2d at 380. However, two properties with identical market values may have appreciated at different rates due to the age of the property or other market conditions. As a result, these two equally-valuable properties would have different limited market values. Therefore, taking equalization reductions from limited market value, which may vary for two identically-valued properties, would not serve the purpose of equalization, which is to bring assessed property values within a uniform percentage of actual market value. Rather, such a rule would provide a windfall for taxpayers who qualify for both forms of relief by creating a situation in which taxpayers who suffer from unequal assessment would actually pay less in taxes than if their property had been assessed fairly in the first instance.

The purpose of Minn.Stat. § 273.11, to cap annual increases in assessed property value, is better served by first applying equalization relief to fair market value. If

---

assessors' *estimated market values,* while the second, intended for calculation of state aids, compares sales with assessors' *taxable market values.* Minn. Dep't of Revenue, 2003 Sales Ratio Study Criteria 1. The IAAO standards and the Department of Revenue's practice therefore support a reading of section 278.05, subdivision 4, under which limited market value is used only for the computation of state aids.

7. This contrasts with indirect equalization, which seeks to equalize the differences in tax capacities between different taxing districts. Because indirect equalization requires a determination of a taxing district's aggregate tax capacity, it is appropriate to consider that capacity as it is affected by limited market value and other constraints on taxable value.

a taxpayer receives an equalization reduction based on actual market value under Minn.Stat. § 278.05, subd. 4, and that equalized value falls below the property's limited market value, there is no need to adjust the equalized value further. The equalization relief alone will bring the taxable value under the cap mandated by Minn.Stat. § 273.11, subd. 1a. If, however, the equalized value of property exceeds limited market value, Minn.Stat. § 273.11, subd. 1a, would hold the assessed value to the limited market value.

We therefore hold that, when a taxpayer qualifies for both equalization relief under Minn.Stat. § 278.05, subd. 4, and limited market value relief under Minn.Stat. § 273.11, subd. 1a, the taxpayer's equalization reduction must first be applied to the property's actual market value before its limited market value is determined.

Reversed.

PAGE, J., took no part in the consideration or decision of this case.